OPINION OF THE COURT
Alexander, J.
In interpreting the scope of a public employee’s right to organize without interference under the Public Employees’ Fair Employment Act (Civil Service Law, art 14, § 200 et seq., popularly known as the Taylor Law), the Public Employment Relations Board (PERB) has determined that activities engaged in by petitioner, a college French teacher — including intermittent, informal meetings with other unorganized faculty members and presenting to their employer, the college, *45 grievances relating to their terms and conditions of employment — did not constitute "employee organization” within the meaning of section 201 (5) and was not activity protected by section 202. PERB thereby rejected an interpretation of the Taylor Law that would extend that statute’s protection to "concerted activity” which falls short of "employee organization”. For the following reasons, we agree with PERB’s interpretation of the applicable provisions of the Taylor Law and affirm the order of the Appellate Division.
I
Petitioner, Francine Rosen, is a teacher at Dutchess Community College[1] and at the college’s affiliated French School in Poughkeepsie, New York.[2] The faculty of the college proper is represented by the Dutchess United Teachers; the faculty of the French School, however, is not formally organized. During the fall semester of 1980, faculty members at the French School, including petitioner, began to meet informally to discuss their concerns about various aspects of their employment. On behalf of the group, and with the knowledge and consent of at least some of them, petitioner related their grievances to the associate dean at the main campus responsible for supervising the French School. Petitioner voiced the complaints of the group during meetings with the associate dean commencing in May 1981, and continuing through 1982. The record discloses meetings and correspondence between the two concerning salary, classroom size and course load. Additionally, petitioner attempted on several occasions to resolve an individual complaint regarding her own status as a part-time employee at the college.
In January 1983, the college administration reduced petitioner’s teaching schedule by a four-hour course, thereby reducing her semester income by $1,400. Petitioner subsequently filed with PERB an improper employer practice charge, alleging that the college had retaliated against her for having exercised her right to organize in violation of Civil Service Law § 209-a (1). The Administrative Law Judge dis *46 missed the charge, finding that the college had shown that it would have reduced petitioner’s hours — regardless of her complaints about the terms and conditions of employment at the French School — because it did not wish to afford her full-time status. Upon administrative review, however, the Board concluded that the college had indeed reduced petitioner’s hours "at least in part because [she] complained about the terms and conditions of employment at the French School”.[3] PERB found that although petitioner’s complaints were "made with the knowledge and consent of some of the teachers at the French School after they had discussed their concerns among themselves”, there was no indication in the record that these teachers were "seeking to form an employee organization or to be represented by such an organization”. Comparing the language of section 202 to the broader provisions found in the National Labor Relations Act (29 USC § 151 et seq. [NLRA]), PERB concluded that the breadth of employee activity protected by section 202 was more narrow than that embraced by the analogous provisions in the NLRA, which explicitly protect certain "concerted activity” such as that in which petitioner engaged. PERB determined that the college had therefore not committed an improper practice under section 209-a (1), which prohibits interference with the rights guaranteed to the public employee under section 202.
Petitioner thereafter instituted the instant proceeding pursuant to CPLR article 78 and Civil Service Law § 213. Supreme Court annulled PERB’s determination and ordered petitioner reinstated with back pay. The court concluded that PERB’s interpretation of section 202 was unduly narrow, that petitioner’s activities did fall within those protected by section 202, and that the college’s reduction of petitioner’s course load in part because of her representation of the group’s grievances constituted an improper practice in violation of section 209-a (1). After observing that the right to organize is illusory if employees "can be fired * * * upon rumblings that qualitatively fall short of PERB’s standard [of what constitutes an employee organization]”, the court noted that the agency’s interpretation would have a chilling effect upon others initiating concerted activity (128 Misc 2d 628, 633). The Appellate *47 Division reversed and confirmed the determination of PERB, holding that differences between the provisions in the Taylor Law and the corresponding provisions of the NLRA provide a rational basis for according the Taylor Law a more narrow construction. The appeal is here pursuant to leave granted by this court.
Petitioner contends that the informal meeting of the faculty members at the French School to discuss complaints regarding the terms and conditions of their employment and her presentation, on their behalf, of these grievances, constitutes an assertion of public employee rights under section 202. Moreover, petitioner urges PERB’s restrictive interpretation undermines the purpose of the statute, chills initiatives to form organizations in the workplace, and encourages public employers to retaliate against employees before signs of formal organization have surfaced.
II
Initially, we note that no question is presented on this appeal as to whether there is substantial evidence in the record to support an administrative determination (see, CPLR 7803 [4]). Rather, the issue as framed by the parties below is whether, on the undisputed facts of this case, PERB has rationally interpreted the scope of a public employee’s right to organize under section 202 as not including "concerted activity” that falls short of "employee organization” (see, CPLR 7803 [3]). An administrative agency’s interpretation of the statute it is charged with implementing is entitled to varying degrees of judicial deference depending upon the extent to which the interpretation relies upon the special competence the agency is presumed to have developed in its administration of the statute. Where interpretation "involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data” within the agency’s particular expertise (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459), great deference is accorded the agency’s judgment (see, Matter of Incorporated Vil. of Lynbrook v New York State Pub. Employment Relations Bd., 48 NY2d 398, 404 [prohibited subjects of bargaining]; Matter of West Irondequoit Teachers Assn. v Helsby, 35 NY2d 46, 50-51 [mandatory subjects of bargaining]). On the other hand, where as here, the question is one of pure statutory construction "dependent only on accurate apprehension of legislative intent [with] little *48 basis to rely on any special competence” (Kurcsics v Merchants Mut. Ins. Co., supra, at 459), judicial review is less restricted as " 'statutory construction is the function of the courts’ ” (Matter of Howard v Wyman, 28 NY2d 434, 438, quoting Matter of Mounting & Finishing Co. v McGoldrick, 294 NY 104, 108; see, Matter of Town of Mamaroneck PBA v New York State Pub. Employment Relations Bd., 66 NY2d 722, 724).
Turning then to the provisions of the Taylor Law at issue, section 209-a (1) declares that certain conduct, when deliberately engaged in by a public employer, shall constitute an improper employer practice: "[i]t shall be an improper practice for a public employer or its agents deliberately (a) to interfere with, restrain or coerce public employees in the exercise of their rights guaranteed in [section 202] for the purpose of depriving them of such rights; (b) to dominate or interfere with the formation or administration of any employee organization for the purpose of depriving them of such rights; [or] (c) to discriminate against any employee for the purpose of encouraging or discouraging membership in, or participation in the activities of, any employee organization”. Any finding of an improper employer practice under section 209-a (1), however, must be supported by a finding that the employee was coerced, restrained, discriminated against, or punished for having engaged in activity that is protected under section 202 of the Taylor Law — i.e. as a consequence of having exercised rights guaranteed by section 202. Section 202 in turn provides that "[p]ublic employees shall have the right to form, join and participate in, or to refrain from forming, joining or participating in, any employee organization of their own choosing.”
In order to apprehend the breadth of activities the Legislature sought to protect by the right to "form, join and participate in * * * any employee organization”, we look to a Federal counterpart, the National Labor Relations Act, which governs the relationship between employers and employees in the private sector (29 USC § 152 [2]; NLRA § 2 [2]). Although "the differences between the statutes are marked and undoubtedly reflect the legal and economic differences between public and private employment”, our State Legislature, in drafting the Taylor Law some 20 years ago, "drew heavily” upon statutes regulating private employer-employee relations such as the NLRA, and it is particularly appropriate to examine and compare the language of each in order to discern *49 an intent, if there be, that the Taylor Law have either a broader or more restrictive reach (Matter of Civil Serv. Employees Assn. v Helsby, 21 NY2d 541, 546).
The provision in the NLRA corresponding to section 202 of the Taylor Law states that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection” (29 USC § 157; NLRA § 7 [emphasis added]). Conspicuously absent from the formulation of a public employee’s right to organize in section 202 is the additional right guaranteed in the NLRA "to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection”. We conclude from the otherwise parallel terminology in each provision that the Legislature, by omitting from section 202 of the Taylor Law the additional reference to "concerted activity”, intended to afford a public employee only the right to form, join or participate in an employee organization. Because the Legislature has by its definition restricted the reach of section 202, it must not have intended for section 202 to protect precisely the same broad range of employee activity as is protected under section 7 of the NLRA (see, e.g., Labor Bd. v Washington Aluminum Co., 370 US 9 [seven wholly unorganized employees engaged in protected concerted activity when they walked out of machine shop protesting about cold conditions]; see also, Eastex, Inc. v NLRB, 437 US 556, 565).
Nevertheless, petitioner argues, the term "employee organization” should be interpreted as including the concerted activity at issue here. The term "employee organization” is defined in section 201 (5) of the Taylor Law as "an organization of any kind having as its primary purpose the improvement of terms and conditions of employment of public employees”. The language is broad; section 201 (5) encompasses organizations of "any kind”. Yet, the provision bears comparing to its counterpart in the NLRA, which contains in its definition of "labor organization” the additional phrase: "or any agency or employee representation committee or plan” (29 USC § 152 [5]; NLRA § 2 [5]).[4] Clearly, section 201 (5) contemplates a more *50 limited range of what may permissibly constitute an employee organization than does the NLRA. Thus, we conclude, as did PERB, that the omission of additional language that would have expanded the definition of employee organization evinces a legislative desire that the Taylor Law protect the formal organization of employees, or efforts to form an actual organization, rather than activity, albeit concerted, that is an informal and infrequent airing of grievances without recognized representatives (see, e.g., Matter of Civil Serv. Employees Assn. v Newman, 90 AD2d 114, 117 [indicia of organization included selection of name for organization, election of officer, and discussion of proposed constitution]).
Unquestionable omissions from the Taylor Law of certain rights explicitly accorded in analogous provisions of the NLRA reflect an effort to advance concerns peculiar to the Taylor Law — such as the promotion of "harmonious and co-operative relationships between government and its employees” and the prevention of "interruptions of government operations” — that are inapplicable under the NLRA (Matter of Zuckerman v Board of Educ., 44 NY2d 336, 342; Civil Service Law § 200). Manifestly, the Legislature sought to exclude from a statutory scheme regulating public employment certain rights and advantages conferred upon those in the private sector (see, e.g., Civil Service Law § 200 [public employees have no right to strike]). Not only is the scope of the protected right to organize drawn more restrictively in section 202 of the Taylor Law than in section 7 of the NLRA, but a comparison of the corresponding definitions of the term employee organization reveals that the Taylor Law was not intended to protect unorganized — though concerted — activity. Having concluded that petitioner and the other teachers had not formed, or sought to form, an employee organization, and had not exercised any right guaranteed by section 202, PERB correctly determined that the college therefore did not commit an improper employer practice within the meaning of section 209-a (1).
 Differences in language and definition notwithstanding, petitioner urges that exclusive reliance on the NLRA in reaching a narrower construction of the Taylor Law, contravenes section 209-a (3) of the Taylor Law, which provides that *51 "[i]n applying this section [209-a], fundamental distinctions between private and public employment shall be recognized, and no body of federal or state law applicable wholly or in part to private employment, shall be regarded as binding or controlling precedent.” To be sure, this provision prohibits reliance on the NLRA itself, and case law interpreting that statute, as mandating a particular result. It does not, however, prohibit a comparison of the two statutes and the body of case law interpreting each in order to ascertain the meaning of provisions in the Taylor Law, and to discern our Legislature’s intent in drafting them. Finally, petitioner’s insistence that this interpretation chills concerted efforts preparatory to actual formation of an employee organization is misplaced here. As PERB found, there is no evidence in this record that the teachers — informally airing their grievances over a period of approximately two years — were seeking to form, or be represented by, an employee organization. Moreover, the Taylor Law makes it an improper employer practice to interfere with the formation of an employee organization (see, Civil Service Law § 209-a [1]).
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.

. In previous proceedings, PERB determined that petitioner is a public employee and that the college is a public employer within the meaning of Civil Service Law § 201 (6) (a); (7) (a).

. The French School is operated by the college pursuant to a contract with IBM Corp. to provide elementary and secondary education to the dependent children of IBM France employees who have been assigned to work for IBM in Poughkeepsie, New York.

. PERB rejected the college’s assertion that it cut petitioner’s teaching time in response to her continued requests for full-time status because that assertion was inconsistent with the fact that petitioner was permitted to teach well over the requisite number of hours for full-time status even after the cut.

. The entire definition reads as follows: "The term 'labor organization’ means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for *50 the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work”.