■ In the Matter of GEORGE DE VITO et al., Petitioners, v PAULINE R. KINSELLA, as Chairperson of the New York State Public Employment Relations Board, et al., Respondents. [650 NYS2d 484] —Cardona, P. J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Public Employment Relations Board which found that respondent Police Commissioner of the City of Rye had not committed an improper employer practice.

Petitioner George De Vito is a Sergeant in the City of Rye Police Department and is president of petitioner Rye Police Association, Inc. (hereinafter RPA), the certified bargaining agent representing various police officers in the department. On April 26, 1993, De Vito, as president of the RPA, filed an improper employer practice charge against the City of Rye, Westchester County, alleging that its Police Commissioner, respondent Anthony J. Schembri, violated a provision of the Public Employees' Fair Employment Act (hereinafter the Act), specifically, Civil Service Law § 209-a (1) (a), by issuing a March 10, 1993 memorandum which precluded De Vito from working overtime or from swapping duty tours. In a hearing before the

Assistant Director of Public Employment Practices and Representation, for respondent Public Employment Relations Board (hereinafter PERB), De Vito contended that the memorandum was issued in retaliation for his participation in three activities protected by the Act: (1) the RPA's filing in February 1993 of a petition for compulsory interest arbitration naming De Vito as its representative on the arbitration panel, a copy of which was never served on Schembri, (2) a March 2, 1993 letter from the RPA's law firm to the City Manager complaining about Schembri's alleged accusation of racist behavior by De Vito and another police sergeant, and (3) a March 9, 1993 letter sent by De Vito to Schembri requesting a staff meeting on behalf of all members of the police department. The March 9, 1993 correspondence alleged that Schembri had ignored previous requests for a staff meeting and that Schembri's search for employment elsewhere was having a negative affect on the department.

Crediting the testimony of Schembri and Sergeant Robert Falk, the department's administrative sergeant during the first half of 1993, that Schembri had determined to suspend De Vito's overtime and tour-swapping privileges on March 3 or 4, 1993 because of De Vito's abuse of sick leave, the Assistant Director found that De Vito failed to establish that Schembri was aware of De Vito's activities at the time he issued the March 10, 1993 memorandum and that the memorandum was not issued because of those activities. The Assistant Director dismissed De Vito's charge. De Vito filed exceptions to the decision with PERB. PERB adopted the Assistant Director's findings of fact and conclusions, affirmed the decision and dismissed the charge. Petitioners commenced this CPLR article 78 proceeding to annul PERB's determination. The issue is whether PERB's determination is supported by substantial evidence in the record as a whole (*see, Matter of State of N. Y. Dept. of Correctional Servs. v Kinsella*, 220 AD2d 19; *Matter of Margolin v Newman*, 130 AD2d 312, 315, *appeal dismissed* 71 NY2d 844). Accordingly, our inquiry is limited to whether "there exists a rational basis to support the findings upon which the agency's determination is predicated" (*Matter of Purdy v Kreisberg*, 47 NY2d 354, 358).

The record shows that one of Falk's duties as administrative sergeant for the patrol division was to monitor attendance, track sick leave use and overtime expenses. Falk reported to Schembri on a weekly basis. They discussed the high cost of overtime to the City due to the excessive use of sick leave. In January 1993, De Vito charged seven sick days while being

available to work overtime nine times. In February 1993, De Vito charged four sick days but was available to work seven overtime tours. De Vito had the highest amount of sick leave usage during the months of January and February 1993. On March 3, 1993, De Vito called in sick for his scheduled midnight-to-8:00 A.M. shift but worked the 4:00 P.M.-to-midnight shift which he had swapped with another sergeant. On March 3 or 4, 1993, Falk brought this fact to Schembri's attention. They discussed the options and Falk reminded Schembri that in October 1990, Schembri had sanctioned another sergeant for excessive sick leave usage by suspending his overtime and side-job privileges. Schembri then made the decision to sanction De Vito and prepared a memorandum, which was later dated March 10, 1993. Falk gave it to the desk officer on March 9, 1993 for delivery to De Vito when he started his scheduled midnight-to-8:00 A.M. shift on March 10, 1993. Falk further testified that the delay in delivering the memorandum was to accommodate De Vito's prearranged tour swaps with other sergeants.

We note that "[i]t is not the function of an appellate court to weigh the evidence, reject testimony or substitute its judgment on matters of credibility" (*Matter of TPK Constr. Corp. v Hudacs*, 205 AD2d 894, 896-897). We find that the credited testimony supplies a rational basis to support the findings that Schembri was not aware of any of the three specified activities before he decided to restrict De Vito's overtime and tour-swapping privileges, and that the memorandum was not issued because of those activities.

We have considered De Vito's remaining arguments and find that they lack merit. The determination should, therefore, be confirmed and the petition dismissed.

Mikoll, Mercure, Crew III and Peters, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.