[684 NYS2d 705]

In the Matter of GREENBURGH No. 11 UNION FREE SCHOOL DISTRICT, Petitioner, v PAULINE R. KINSELLA, as Chairperson of the New York State Public Employment Relations Board, et al., Respondents.

Third Department, February 11, 1999

### APPEARANCES OF COUNSEL

*Ruberti, Girvin & Ferlazzo, P. C.,* Albany (*E. Michael Ruberti* of counsel), and *Shaw & Perelson, L. L. P.,* Poughkeepsie, for petitioner.

*Gary Johnson,* Public Employment Relations Board, Albany, for Pauline R. Kinsella and another, respondents.

*James R. Sandner,* New York City (*J. Christopher Meagher* and *Conrad W. Lower* of counsel), for Federation of Teachers, Local 1532, AFT, AFL-CIO, respondent.

### OPINION OF THE COURT

Mercure, J.

Petitioner is a school district created by the Legislature to serve the residents of Children's Village, a not-for-profit residential child care facility for emotionally handicapped children located in the Village of Dobbs Ferry, Westchester County. In 1994, Sandra Mallah was petitioner's Superintendent and re-

spondent Greenburgh No. 11 Federation of Teachers, Local 1532, AFL-CIO (hereinafter the Federation) was the labor organization representing the interests of the teachers and teacher's aides at Children's Village. As of that time, labor relations between petitioner and the Federation had been strained for years. These proceedings arise out of Federation demonstrations that took place in March 1994 and June 1994 and, more particularly, petitioner's response to them.

On March 10, 1994, Children's Village held its annual "WAY Dinner". Forewarned of possible problems, petitioner had sought and obtained an order restraining Federation picketing at the dinner. Nonetheless, 10 Federation members (eight teachers and two aides) picketed at the event. The picketers were found guilty of criminal and civil contempt, and petitioner thereafter filed disciplinary charges against them pursuant to Education Law § 3020-a. Petitioner discharged the two teacher's aides and removed the eight teachers from their classrooms and assigned them curriculum duty at off-site libraries, assigning each teacher to a different library.

On June 24, 1994, a group of approximately 30 to 40 Federation members, including three teacher's aides and 10 teachers (six of whom had also been involved in the picketing incident), assembled outside Mallah's office at the school as a demonstration of their support for Thomas Dilworth, a teacher and Federation member who was then meeting with Mallah concerning potential disciplinary charges against him. The police were called to the scene, Mallah informed them that she wanted the employees out of the hallway, and the crowd was caused to disperse. As a result of this incident, petitioner discharged the three teacher's aides involved and suspended the teachers and assigned them to libraries to write curriculum.

The Federation thereafter filed a series of unfair practice charges against petitioner, alleging that the disciplined employees were being punished for engaging in protected activity pursuant to Civil Service Law § 202 and that petitioner was in violation of Civil Service Law § 209-a (1) (a), (c), (d) and (e). Following extensive hearings, an Administrative Law Judge (hereinafter ALJ) determined, *inter alia*, that: (1) the conduct of those involved in the picketing at the WAY Dinner in violation of a restraining order did not constitute activities protected by the act (*see*, Civil Service Law § 200 *et seq.*) and that petitioner's subsequent disciplinary actions were not improperly motivated nor was the incident a pretext for the disciplin-

ary actions, (2) the improper practice charge based upon the discipline imposed for the picketing at the WAY Dinner should be dismissed, (3) a prima facie case had been made for the improper practice charge regarding the disciplinary actions against the participants in the June 24, 1994 incident outside Mallah's office, based upon the conclusion that petitioner used the charges as a pretext to undertake disciplinary actions against active Federation members, (4) the remaining improper practice charges should be dismissed, and (5) the Federation should be denied costs and counsel fees. The ALJ rescinded the pending Education Law § 3020-a charges against the Federation members involved in the incident outside Mallah's office, reinstated them to their classroom duties and dismissed all remaining charges.

Both petitioner and the Federation sought review of the ALJ's decision by the Public Employment Relations Board (hereinafter PERB). PERB ultimately rendered a determination: (1) affirming the conclusion that the teachers' violation of the restraining order by picketing the WAY Dinner was not protected action and, as a consequence, affirming the dismissal of the improper practice charge regarding the discipline of those persons involved in this incident in all respects except as related to Mallah's decision to assign teachers to develop curriculum separately and in isolation to one another, (2) disagreeing with the ALJ regarding petitioner's method of discipline for the teachers involved in the WAY Dinner incident and concluding that petitioner's decision to discipline them by splitting them up and assigning them to different libraries was improperly motivated and was violative of Civil Service Law § 209-a (1) (a) and (c), (3) concluding that the June 24, 1994 demonstration was protected activity, that petitioner's actions in that regard violated Civil Service Law § 209-a (1) (a) and (c), and that the resulting disciplinary charges must be dropped, and (4) affirming the ALJ's denial of costs and counsel fees. Thereafter, petitioner commenced this CPLR article 78 proceeding to review PERB's determination. Pursuant to CPLR 7804 (g) and upon the parties' stipulation, Supreme Court transferred the proceeding to this Court.

Initially, we agree with petitioner's contention that PERB erred in its conclusion that petitioner violated Civil Service Law § 209-a (1) when it disciplined the teachers involved in the picketing incident by suspending them from their classrooms and assigning them to curriculum work at separate libraries. Fundamentally, in order to establish a charge of unfair practice

under the Taylor Law (Civil Service Law § 200 *et seq.*), a charging party must satisfy the three-pronged test propounded in *Matter of City of Salamanca (City of Salamanca D.P.W. Empls.)* (18 PERB ¶ 3012) by proving that it was engaged in activities protected by the Taylor Law and that the party charged had knowledge of and acted because of those activities (*see, id.; see also, Matter of Port Jefferson Teachers' Assn. [Port Jefferson Union Free School Dist.]*, 31 PERB ¶ 4574; *Matter of Cummings [New York City Tr. Auth.]*, 30 PERB ¶ 4564; *Matter of Civil Serv. Empls. Assn. [Village of Westbury]*, 26 PERB ¶ 4515; *Matter of New Paltz Cent. School Dist. [New Paltz United Teachers]*, 17 PERB ¶ 3108). Further, a finding of an improper employer practice under Civil Service Law § 209-a (1) "must be supported by a finding that the employee was coerced, restrained, discriminated against, or punished for having engaged in activity that is protected under [Civil Service Law § 202]" (*Matter of Rosen v Public Empl. Relations Bd.*, 72 NY2d 42, 48).

Here, the ALJ concluded (and PERB did not disturb the finding) that the teachers and aides were not involved in protected activity when they violated the restraining order by picketing the WAY Dinner. It would therefore appear that the Federation could not support its charge because it could not show that petitioner acted to coerce, restrain, discriminate or punish the teachers based upon any protected activity (*see,* Civil Service Law § 209-a [1]). Instead, PERB based its finding of a violation upon the conclusion that petitioner's disciplinary actions were improperly motivated. Under controlling precedent, however, and in the absence of a finding that the punishment resulted from the teachers' involvement in protected activities, that conclusion is irrelevant (*see, Matter of City of Salamanca [City of Salamanca D.P.W. Empls.]*, 18 PERB ¶ 3012, *supra; see also, Matter of Port Jefferson Teachers' Assn. [Port Jefferson Union Free School Dist.]*, 31 PERB ¶ 4574, *supra; Matter of Cummings [New York City Tr. Auth.]*, 30 PERB ¶ 4564, *supra; Matter of Civil Serv. Empls. Assn. [Village of Westbury]*, 26 PERB ¶ 4515, *supra*).

In our view, PERB's effort to distinguish the type of improper practice charges that allege protected activity to be "the reason for, but not the object of, the employer's adverse employment action" from those where the protected activity is the object of the adverse action is entirely unpersuasive. First, the precedent supplied by PERB supports no such dichotomy. Second, even if such a distinction was to be recognized, PERB has

pointed to no protected activity that was being undertaken by the teachers who were being punished. To the contrary, PERB appears to have concluded that petitioner acted in reaction to the picketing. Third, PERB's analysis impermissibly places the burden upon petitioner to establish a legitimate business or educational purpose for the decision to assign only one teacher per library. While it is true that once a prima facie case of improper motivation has been established, the burden of persuasion shifts to the party charged to establish that its actions were motivated by legitimate business purposes (*see, Matter of Board of Educ. v New York State Pub. Empl. Relations Bd.*, 167 AD2d 398, 399, *lv denied* 77 NY2d 805), here no prima facie case could have been established because there was no protected activity to which petitioner was reacting. Based upon the foregoing, we conclude that PERB's finding that petitioner violated Civil Service Law § 209-a (1) (a) and (c) when it split the teachers up and assigned them to different libraries is irrational and must be annulled.

■ Turning now to the charges arising out of the June 24, 1994 incident, we reject petitioner's contention that there is not substantial evidence in the record to support the conclusion that the demonstration outside Mallah's office was protected activity under the Taylor Law (*see, Matter of Village of Scotia v New York State Pub. Empl. Relations Bd.*, 241 AD2d 29, 31; *Matter of De Vito v Kinsella*, 234 AD2d 640, 641). The right of public employees to form, join and participate in any employee organization (*see*, Civil Service Law § 202) is not strictly limited to activities in furtherance of collective bargaining rights (*see, Matter of Village of Scotia v New York State Pub. Empl. Relations Bd., supra*, at 31). To the contrary, the right is broad enough to encompass protests directed against disciplinary actions, as took place here.

The fact that an activity is concerted, however, does not necessarily mean it is protected; employees can lose protection if they act in an abusive manner (*see, id.*, at 32). Although the evidence on the issue was sharply divergent, there was substantial evidence to support PERB's finding that the concerted activity of the Federation members outside Mallah's office was not abusive or destructive. Weighing the evidence, PERB relied heavily upon the testimony of Chief of Police Richard Denike, whom it described as the only entirely disinterested witness and the one who offered the most objective description of the demonstration. Denike explained that he arrived at the school somewhere before 3:00 P.M., went into the

building where the crowd had collected, stayed there for approximately 15 minutes and was able to view nearly the entire demonstration. Denike explained that he looked around the crowd of people and did not see anything of a hazardous nature. He saw a group of people and could hear several voices louder than others, but no one had spoken so loudly that it interrupted the conversation he was having with one of the persons who had gathered with the crowd. He heard no pounding on Mallah's door, situated only 20 feet distant, and felt that the crowd was not unruly or in need of police control. When told that their permission to be in the building had been revoked, the demonstrators left peacefully.

In view of the foregoing, we conclude that there is substantial evidence in the record to support PERB's findings of a violation arising out of the June 24, 1994 incident outside Mallah's office (*see, Matter of Rosen v Public Empl. Relations Bd.*, 72 NY2d 42, 48, *supra*; *Matter of Village of Scotia v New York State Pub. Empl. Relations Bd.*, *supra*, at 31; *Matter of De Vito v Kinsella*, *supra*, at 641).

CARDONA, P. J., YESAWICH JR., CARPINELLO and GRAFFEO, JJ., concur.

Adjudged that the determination is modified, on the law, without costs, by annulling so much thereof as found petitioner guilty of an improper practice stemming from the picketing incident; petition granted to that extent; and, as so modified, confirmed.