[702 NYS2d 694]

In the Matter of STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al., Appellants, v NEIL D. LEVIN, as Superintendent of Insurance of the State of New York, Respondent.

Third Department, January 27, 2000

### APPEARANCES OF COUNSEL

*LeBoeuf, Lamb, Greene & MacRae,* Albany (*Frank J. Fanshawe* of counsel), for appellants.

*Eliot Spitzer, Attorney General,* Albany (*Daniel Smirlock* of counsel), for respondent.

### OPINION OF THE COURT

Spain, J.

Under chapter 639 of the Laws of 1996, the Legislature enacted the New York Health Care Reform Act of 1996 (hereinafter HCRA)[1] in an effort to improve the accessibility

---

1. The recent amendments to HCRA are not in issue on this appeal (*see,* L 1999, ch 412).

and affordability of health care throughout the State. HCRA established "public good" pools, or special revenue accounts, designed to fund "public good" programs for medical services to the indigent. In order to fund these public good pools, HCRA established a surcharge on payments by all payors—including, *inter alia*, insurance companies—for in-patient hospital services and certain out-patient health care services rendered by designated health care providers (*see*, Public Health Law § 2807-j [1]). Accordingly, insurers which make payments to such health care providers for covered services must pay a surcharge of 8.18% of the total cost of those services, provided the surcharge is paid directly by the payor-insurers to the administrator of the pool. However, if payor-insurers choose to pay the surcharge to the pool indirectly through the health care providers the surcharge increases to 32.18%, thereby strongly encouraging payor-insurers to pay the surcharge directly to the pool (*see*, Public Health Law § 2807-j [2]).

Public Health Law § 2807-j (1) expressly provides that the surcharge is applicable to insurers providing no-fault motor vehicle insurance (hereinafter no-fault). Insurance Law §§ 5102 and 5103 require that motor vehicle insurance policies provide no-fault insurance—or reimbursements without regard to fault—for a covered "basic economic loss" arising from the use or operation of a motor vehicle up to $50,000. "Basic economic loss" includes expenses incurred for, *inter alia*, medical, hospital, surgical, nursing, dental and ambulance services (*see*, Insurance Law § 5102). However, critical to this action/proceeding, the Public Health Law does not specifically address how the surcharge should be treated in relation to the payment of first-party benefits under no-fault for covered medical services provided to eligible persons, i.e., are the surcharge payments made by an insurer (whether paid directly or indirectly) to the "public good" pools, a component of "medical expense" and therefore "basic economic loss," such that the surcharge, like the payment for the service itself, serves to reduce the total available coverage for such loss established in a given no-fault policy?

In this regard, on November 22, 1996, the Department of Insurance[2] issued Circular Letter No. 16 (hereinafter the Circular Letter) in which it determined that the 8.18% surcharge "can be offset against the applicant's [i.e., the eligible person's] No-Fault benefit package." The Department's interpretation

---

2. Respondent—the Superintendent of Insurance—and the Department of Insurance will hereinafter be collectively referred to as the Department.

therein was confirmed in an August 22, 1997 opinion to that effect (hereinafter the Board's opinion) from the Workers' Compensation Board (hereinafter the Board)—which had been solicited by the Department of Health—regarding the treatment of the surcharge. Specifically, the Board's 1997 opinion states as follows: "It has always been our impression that the intent of the Health Care Reform Act was to mandate that the surcharge be applied to any existing fee. Therefore, it would be unfair for providers to absorb the surcharge, as part of the fees allowed by the Workers' Compensation Board." In August 1998, the Department advised petitioners' attorneys that the Circular Letter constituted its "final agency action."

Significantly, the Insurance Law mandates that health care provider charges under no-fault policies "shall not exceed the charges permissible under the schedules prepared and established by the [chair] of the workers' compensation board for industrial accidents" (Insurance Law § 5108 [a]). In practice, the Department—in establishing the reimbursement available to health care providers under the no-fault law—has formally adopted these existing fee schedules established by the Board (see, 11 NYCRR 68.1 [a]).

Petitioner State Farm Mutual Automobile Insurance Company is an authorized no-fault insurance carrier in New York. Petitioner National Association of Independent Insurers is a national trade association of approximately 570 member insurance companies, approximately 140 of which are authorized no-fault motor vehicle insurance carriers in this State. Petitioners commenced this combined CPLR article 78 proceeding and action for declaratory judgment and related injunctive relief seeking, inter alia, a declaration that the 8.18% surcharge imposed under HCRA does not constitute an indemnity payment, i.e., that the surcharge may not be offset against eligible persons' "basic economic loss" so as to reduce their total available coverage for "basic economic loss" under a no-fault policy. Supreme Court found that petitioners had standing to bring the proceeding/action, but dismissed it in its entirety finding the Department's interpretation to be reasonable and rational. Petitioners now appeal, and we affirm.

Initially, we reject respondent's contention, raised on this appeal as an alternate ground for affirmance, that petitioners lack standing to bring this proceeding. Petitioners have standing to contest an administrative decision if they established that they have been injured in a respect different from the general public and that this injury falls within the zone of interests

that the statute aims to protect or promote (*see, Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 773; *Matter of Hoston v New York State Dept. of Health*, 203 AD2d 826, 827, *lv denied* 84 NY2d 803). Clearly, petitioners allege sufficient injuries, namely, that they have suffered increased aggregate costs because of the Department's interpretation of HCRA (*see, Matter of New York State Conference of Blue Cross & Blue Shield Plans v Muhl*, 253 AD2d 158, 162, *lv denied* 93 NY2d 807). Moreover, HCRA was enacted to enhance the accessibility and affordability of health care—and petitioners have an interest in the extent to which their no-fault policies afford coverage for basic economic loss and how system-wide costs may affect policy premiums for their subscribers—rendering petitioners' claims within the zone of interests protected by the statute (*see, id.*, at 163).

█ Turning next to the merits, the well-established principles governing our review of an administrative agency's interpretation of a statute is whether the interpretation is arbitrary and capricious or irrational (*see, Matter of Lippman v Public Empl. Relations Bd.*, 263 AD2d 891, 894-895). Additionally, "[g]reat deference is accorded to an agency's judgment where its interpretation 'involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom'" (*id.*, at 892, quoting *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459). Moreover, the Department has wide authority to interpret, clarify and implement legislative policy by prescribing regulations, provided they are not inconsistent with other specific statutory provisions (*see, Ostrer v Schenck*, 41 NY2d 782; *Matter of Health Ins. Assn. v Corcoran*, 154 AD2d 61, 67, *affd* 76 NY2d 995; *see also, Matter of New York Pub. Interest Research Group v New York State Dept. of Ins.*, 66 NY2d 444).

Inasmuch as the Public Health Law does not address how the surcharge should be treated with respect to no-fault payments for covered services, the issue raised herein is not one involving pure statutory construction (*see, Matter of Gruber [New York City Dept. of Personnel—Sweeney]*, 89 NY2d 225, 231-232; *Matter of Rosen v Public Empl. Relations Bd.*, 72 NY2d 42, 47-48; *cf., Matter of Union Indem. Ins. Co. v Superintendent of Ins.*, 92 NY2d 107, 123-124). The question distills to whether we will accord deference to the agencies which collaborated in the interpretation contained in the Circular Letter, namely, the Department and, secondarily, the Board. In light of the expertise of the Department and, indirectly, the

Board in the administration of the no-fault law, we will accept the Department's interpretation "if reasonable and not arbitrary or irrational" (*Matter of Lippman v Public Empl. Relations Bd., supra,* at 894).

Here, the payor-insurers' obligation to pay the surcharge arises automatically from the provision of the service to the eligible patient and is inseparable from their obligation to pay for the service itself. Thus, it is not irrational to treat the surcharge as a portion of the medical expense for which an eligible person or his or her insurer is liable. Such a medical expense, when it is deemed "necessary" under Department regulations (*see,* 11 NYCRR 65.1 [d]), falls within the scope of the "basic economic loss" against which no-fault insurance protects by indemnifying eligible persons for such loss up to the policy limits. It therefore makes sense to permit offset of the basic 8.18% surcharge against an eligible person's "basic economic loss" benefit package.[3]

We are not persuaded by petitioners' argument that the mandated surcharge is not a component of the cost of the medical services. In our view, the cost of medical services is whatever the patient or the insured is charged for them. The "public good" surcharge is a portion of the charges and, thus, reasonably treated as a component of an eligible person's "basic economic loss" under no-fault. We agree with Supreme Court's observation that because the fee schedule is set by the Board, it would be confusing for the Department to adopt a contrary position. Accordingly, concluding that the Department's interpretation that the surcharges may be offset against no-fault policy coverage limits is rational and neither arbitrary nor capricious, we find no basis to disturb its determination.

CARDONA, P. J., CREW III, CARPINELLO and MUGGLIN, JJ., concur.

Ordered that the judgment is affirmed, without costs.

---

**3.** However, as indicated in the Circular Letter, in fairness to those eligible for no-fault benefits, those insurers which elect to pay the surcharge indirectly through the health service providers (rather than directly to the pool administrator) may *not* offset the additional surcharge (24%) against the eligible person's "basic economic loss" benefits, i.e., the additional surcharge cannot be passed along as an offset against the patient's benefits package.