8 N.Y.3d 226 (2007)
864 N.E.2d 56
832 N.Y.S.2d 132
In the Matter of NEW YORK CITY TRANSIT AUTHORITY, Appellant,
v.
NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD et al., Respondents.
Court of Appeals of the State of New York.
Argued January 3, 2007.
Decided February 20, 2007.
*227 Robert K. Drinan, Brooklyn, and Martin B. Schnabel for appellant.
*228 Sandra M. Nathan, Albany, and William L. Busler for New York State Public Employment Relations Board, respondent.
*229 Schwartz, Lichten & Bright, P.C., New York City (Stuart Lichten of counsel), for Transport Workers Union of America, Local 100, respondent.
Nancy E. Hoffman, Albany, William A. Herbert and Jerome Lefkowitz for Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, amicus curiae.
*230 James R. Sandner, New York City, and Stuart I. Lipkind for New York State United Teachers, amicus curiae.
Judges GRAFFEO, READ and PIGOTT concur with Judge SMITH; Chief Judge KAYE dissents in a separate opinion in which Judge CIPARICK concurs; Judge JONES taking no part.

OPINION OF THE COURT
SMITH, J.
The National Labor Relations Act (NLRA), as interpreted in NLRB v J. Weingarten, Inc. (420 US 251 [1975]), gives to an employee of a firm subject to the NLRA the right to have a union representative present with the employee at an investigatory interview, if the employee reasonably believes that the interview might result in disciplinary actiona so-called "Weingarten right." We hold today that the Taylor Law does not give a Weingarten right to New York public employees.

Facts and Procedural History
This case arises out of the New York City Transit Authority's interview of one of its employees, Igor Komarnitskiy. The Authority was informed that Komarnitskiy, a car inspector, had become angry when asked to show a pass before entering a train yard and that, in objecting to the request, he had used a *231 racial slur in referring to employees he thought were treated less strictly. The Authority asked Komarnitskiy for a written response to the allegation, and Komarnitskiy provided one that he had prepared with the help of a representative of the Transport Workers Union (TWU). The Authority, suspicious that the TWU representative had influenced or dictated the content of the response, ordered Komarnitskiy to come to a supervisor's office to prepare a new response, and refused to allow TWU representatives to come with him.
The TWU filed an improper practice charge against the Authority, claiming that it had violated Komarnitskiy's Weingarten right. The Public Employment Relations Board (PERB) upheld the charge, and the Authority brought this CPLR article 78 proceeding against PERB and the TWU, asking that PERB's decision be annulled. Supreme Court dismissed the proceeding, and the Appellate Division affirmed. We granted leave to appeal, and now reverse.

Discussion
Weingarten establishes that, if this case were governed by the NLRA, Komarnitskiy would have been entitled to have union representatives present at his interview with his supervisor. In Weingarten, the Supreme Court upheld a ruling by the National Labor Relations Board (NLRB) that section 7 of the NLRA "creates a statutory right in an employee to refuse to submit without union representation to an interview which he reasonably fears may result in his discipline" (420 US at 256). The question here is whether the Taylor Law (Civil Service Law art 14), specifically Civil Service Law § 202, gives a similar right to public employees in New York. We decide this issue de novo, without deferring to PERB's interpretation of the statute, because "the question is one of pure statutory construction `dependent only on accurate apprehension of legislative intent [with] little basis to rely on any special competence'" of PERB (Matter of Rosen v Public Empl. Relations Bd., 72 NY2d 42, 47-48 [1988], quoting Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]).
Civil Service Law § 202 provides: "Public employees shall have the right to form, join and participate in, or to refrain from forming, joining, or participating in, any employee organization of their own choosing."
This statutory language is in some ways similar to, but in more relevant ways different from, that of the statute interpreted *232 in Weingarten, section 7 of the NLRA (29 USC § 157). Section 7 provides:
"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities. . . ."
While some of the rights given by section 7 ("to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing") have close counterparts in section 202 ("to form, join and participate in. . . any employee organization of their own choosing"), those are not the rights that the Supreme Court relied on in Weingarten. Rather, Weingarten upheld the NLRB's decision that the right to "engage in ... concerted activities for the purpose of... mutual aid or protection" included a right to have union representatives present at disciplinary interviews (420 US at 260). Since the "mutual aid or protection" language is absent from section 202, Weingarten does not support a holding that section 202 creates a Weingarten right. As we explained in Rosen, the differences between section 202 and section 7 are not mere random variations:
"Unquestionable omissions from the Taylor Law of certain rights explicitly accorded in analogous provisions of the NLRA reflect an effort to advance concerns peculiar to the Taylor Lawsuch as the promotion of `harmonious and co-operative relationships between government and its employees' ... that are inapplicable under the NLRA. Manifestly, the Legislature sought to exclude from a statutory scheme regulating public employment certain rights and advantages conferred upon those in the private sector...." (72 NY2d at 50 [citations omitted], quoting Matter of Zuckerman v Board of Educ. of City School Dist. of City of N.Y., 44 NY2d 336, 342 [1978].)
PERB and the TWU argue that a Weingarten right may be inferred from section 202's provision for "the right to ... participate in" labor unions. The right to union representation at disciplinary interviews, however, is not inherent in the right to *233 participate in a union. Of course, employees may seek such a right of representation in collective bargaining; in doing so, they are protected by the Taylor Law's provision, in Civil Service Law § 203, that they "shall have the right ... to negotiate collectively with their public employers in the determination of their terms and conditions of employment." But nothing in the text of the Taylor Law suggests that a Weingarten right is given by the statute itself.
The text and legislative history of a later-enacted statute strongly support our conclusion that the Taylor Law does not confer a Weingarten right. In 1993, 26 years after the Taylor Law's enactment, and 18 years after Weingarten, the Legislature amended Civil Service Law § 75 (2)which applies to many, though not all, of the public employees protected by the Taylor Lawto add the following language:
"An employee who at the time of questioning appears to be a potential subject of disciplinary action shall have a right to representation by his or her certified or recognized employee organization under article fourteen of this chapter and shall be notified in advance, in writing, of such right. If representation is requested a reasonable period of time shall be afforded to obtain such representation. If the employee is unable to obtain representation within a reasonable period of time the employer has the right to then question the employee. A hearing officer under this section shall have the power to find that a reasonable period of time was or was not afforded. In the event the hearing officer finds that a reasonable period of time was not afforded then any and all statements obtained from said questioning as well as any evidence or information obtained as a result of said questioning shall be excluded, provided, however, that this subdivision shall not modify or replace any written collective agreement between a public employer and employee organization negotiated pursuant to article fourteen of this chapter." (L 1993, ch 279, § 1.)
Section 75 (2) gives the employees to which it applies a kind of Weingarten right, but one different from the right that PERB and the TWU ask us to find in the Taylor Law. Under section 75 (2), a violation of a Weingarten right results not in an improper practice proceeding before PERB, but in the exclusion *234 from a disciplinary hearing of statements made at the interview and evidence obtained as a result. And the Weingarten right created by section 75 (2), unlike the right given by the Taylor Law to "participate in ... employee organization[s]," may be surrendered in collective bargaining. It would have made no sense to create the section 75 (2) version of the Weingarten right if a more robust version of that right already existed under the Taylor Law.
The history of the 1993 legislation shows clearly that its supporters did not believe that any Weingarten right existed in New York law before 1993. The supporting memorandum of the Senate sponsor of the 1993 legislation says: "New York State public employees do not have the same protection enjoyed by private sector employees during interviews and discussions by their employers," and goes on to defend the idea of creating such a right with language taken from the Supreme Court's Weingarten decision (Senate Introducer Mem in Support, Bill Jacket, L 1993, ch 279, at 22). A letter from a supporter of the legislation, the president of a civil service union, similarly notes that, under existing law, New York public employees lack the protections enjoyed by private sector employees, and adds: "This protection has been affirmed by the United States Supreme Court in NLRB v Weingarten...." (Letter from Joseph E. McDermott, President of Civ Serv Empls Assn, Mar. 29, 1993, Bill Jacket, L 1993, ch 279, at 49; see also Letter from Stanley Hill, Exec Director, Am Fedn of St, County & Mun Empls, AFL-CIO, Dist Council 37, July 13, 1993, Bill Jacket, L 1993, ch 279, at 59). We see no basis for concluding that the supporters of the 1993 legislation misunderstood the existing law, and were wasting their time in changing it.
Accordingly, the order of the Appellate Division should be reversed, with costs, the petition granted, PERB's determination of October 2, 2002 annulled, and the improper practice charge dismissed.
Chief Judge KAYE (dissenting).
In 1967, the New York State Legislature enacted the Public Employees' Fair Employment Act (Civil Service Law, art 14, § 200 et seq., popularly known as the Taylor Law [L 1967, ch 392, § 2]), explicitly to promote harmonious labor relations in the public sector. Today's decision will, I fear, foster dissonance.
The Public Employment Relations Board (PERB) determined that permitting an employee to have a union representative at *235 an interview which the employee reasonably fears may result in discipline is a right granted under the Taylor Law. Construing the statute de novo (assuming that is the proper standard), I agree with PERB that the fundamental right to participate in a unionas the Legislature intendedincludes the right to a union representative's attendance at a precharge interview, and I would affirm the orders of the trial court and the Appellate Division so holding (see Matter of Rosen v Public Empl. Relations Bd., 72 NY2d 42 [1988] [the Court, undertaking de novo interpretation, agrees with PERB]).
Igor Komarnitskiy, a Car Inspector with the Transit Authority (TA) and a member of the Transport Workers Union (TWU), was accused by a Transit Property Protection Agent of using a racial epithet when, in their native language, he complained about having to show his pass. When the TA requested that Komarnitskiy submit a written response to the allegation on a "G-2" form, he and a TWU Shop Chair together prepared a response: "I presented my parking pass and I.D. card to the property protection person, as per request." Concerned that the Shop Chair may have influenced the content of the G-2 response, the TA directed Komarnitskiy to write out another response behind locked doors in the Superintendent's office. The Shop Chair was denied entrance into the office, and when three other union representatives arrived, they too were denied despite insistent demands. The second G-2 states: "I [three indecipherable words] about the yellow pass. My regular pass was in my hand, and I did not passed the [line] on that moment." Two weeks later, the TWU filed an improper practice petition alleging interference with the employee's right to participate in union activities. When Komarnitskiy was taken into the Superintendent's office behind locked doors, he could have reasonably feared discipline, now for two accusations.
PERB affirmed the Administrative Law Judge's determination that the case should be decided with reference to NLRB v J. Weingarten, Inc. (420 US 251 [1975]). In Weingarten the United States Supreme Court upheld a National Labor Relations Board (NLRB) determination that an employee in the private sector has a right "to refuse to submit without union representation to an interview which he reasonably fears may result in his discipline" (id. at 256). The case involved a lunch counter worker accused of stealing. When a store manager and security agent questioned her, she was denied her request to have the presence of her union representative at the interview. *236 Bursting into tears, she explained that she had thought she was permitted to eat lunch without paying, and the manager pressed her to sign a statement; but the manager later learned that a different branch of the store where she had recently worked did have the "free lunch" policy.
The Court in Weingarten, upholding the finding that the employer had committed an unfair labor practice, based its determination that employees may be represented at an interview that could lead to discipline on language in National Labor Relations Act § 7 (29 USC § 157) that "`[e]mployees shall have the right ... to engage in ... concerted activities for the purpose of ... mutual aid or protection'" (id. at 260). Under the NLRA, it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title" (§ 8 [a] [1] [29 USC § 158 (a) (1)]). The Court also based its rationale on the policies underlying the statute:
"Requiring a lone employee to attend an investigatory interview which he reasonably believes may result in the imposition of discipline perpetuates the inequality the [National Labor Relations] Act was designed to eliminate, and bars recourse to the safeguards the Act provided `to redress the perceived imbalance of economic power between labor and management'" (id. at 262 [citation omitted]).
The Supreme Court emphasized the benefits to employers as well as employees:
"A single employee confronted by an employer investigating whether certain conduct deserves discipline may be too fearful or inarticulate to relate accurately the incident being investigated, or too ignorant to raise extenuating factors. A knowledgeable union representative could assist the employer by eliciting favorable facts, and save the employer production time by getting to the bottom of the incident occasioning the interview" (id. at 262-263).
A court must give effect to the intention of the Legislature by considering, first, the language in "its natural and most obvious sense," then "the general spirit and purpose underlying its enactment" and, later, extrinsic evidence, such as legislative history (see McKinney's Cons Laws of NY, Book 1, Statutes §§ 94, 96, 120; see also Majewski v Broadalbin-Perth Cent. *237 School Dist., 91 NY2d 577, 583 [1998] [courts should use the "natural signification of the words employed" (citations omitted)]). The majority today reverses PERB's determination essentially because the words, "concerted activities for the purpose of ... mutual aid or protection" are not found in the Taylor Law. That section 202 of the Taylor Law omits these words, however, does not contravene an interpretation that the word "participate" in its "natural signification" in the Taylor Law manifests a legislative intent to allow public employees the right to union representation at an investigatory interview when the employee seeks that representation.
Section 200 of the Taylor Law states its underlying purpose:
"The legislature of the state of New York declares that it is the public policy of the state and the purpose of this act to promote harmonious and cooperative relationships between government and its employees and to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government. These policies are best effectuated by (a) granting to public employees the right of organization and representation...."
To further its goals that harmony between public sector employers and employees be achieved through rights of organization and representation, the Legislature extended in section 202 "the right to form, join and participate in ... any employee organization of their own choosing." Section 203 affords employees the right to be "represented by employee organizations, to negotiate collectively with their public employers in the determination of their terms and conditions of employment, and the administration of grievances arising thereunder." Further, section 209-a (1) provides: "It shall be an improper practice for a public employer or its agents deliberately (a) to interfere with, restrain or coerce public employees in the exercise of their rights guaranteed in section two hundred two for the purpose of depriving them of such rights...." Section 205 (5) (d) authorizes PERB to issue a decision and order to resolve improper practice charges. PERB thus has authority to determine whether an employer has committed an improper practice by interfering with an employee's participation in union activities.
"The right of public employees to form, join and participate in any employee organization ... is not strictly limited to activities in furtherance of collective bargaining rights" (Matter of *238 Greenburgh No. 11 Union Free School Dist. v Kinsella, 253 AD2d 46, 51 [3d Dept 1999]; see also Matter of State of N.Y. [Div. of State Police] v Police Benevolent Assn. of N.Y. State Troopers, Inc., 25 AD3d 963 [3d Dept 2006]). Moreover, the request for union representation has been deemed "participation" under section 202:
"Section 209-a.1 (a) of the Act broadly and generally prohibits employer actions which interfere with employees' statutory rights. Employees have the protected statutory right to have union representation with respect to any issue affecting their employment relationship, whether or not that issue embraces a mandatory subject of negotiation. That request for and receipt of union representation constitutes participation in a union, a right specifically protected by § 202 of the Act" (Matter of AFSCME, Local 650, AFL-CIO [City of Buffalo], 30 PERB ¶ 3021, at 3048 [1997]; see also Matter of County of Monroe v Newman, 125 AD2d 1002, 1003 [4th Dept 1986] [supports PERB's construction of sections 202 and 203 as "intimately related," and confirms that "`(a)ction taken for the purpose of frustrating the right of representation ... necessarily has a chilling effect on the § 202 right of organization and is inherently destructive of that right'"]).
Issues concerning union representation on disciplinary matters for bargaining unit members are part of the employment relationship in the public sector (see e.g. Matter of Civil Serv. Empls. Assn. v Public Empl. Relations Bd., 132 AD2d 430 [3d Dept 1987], affd 73 NY2d 796 [1988]; Matter of Patchogue-Medford Congress of Teachers [Patchogue-Medford Union Free School Dist.], 30 PERB ¶ 3041 [1997]; Matter of New York State Pub. Empls. Fedn., AFL-CIO [State of New York (Dept. of Health & Roswell Mem. Inst.)], 26 PERB ¶ 3072 [1993]). Thus, a proper interpretation of the Taylor Law is that it incorporates the right to have representation relating to informal investigations of employee conducta construction that is not negated by the existence of a statute that addresses formal disciplinary actions in Civil Service Law § 75. To "participate" means to take part in something, usually in common with others. Seeking advice from a union representative when a bargaining unit member is most vulnerable certainly is encompassed in the plain language of "participate."
*239 As noted above, the underlying purposes of the Taylor Law are to promote cooperation and to assure "the orderly and uninterrupted operations and functions of government"in other words, to prevent strikes. In 1969two years after the original law was passed and six years before Weingarten was decideda panel led by George W. Taylor, after whom the law was named, issued a report (see New York [State] Governor's Committee on Public Employee Relations. Recommendations for current legislative action with respect to the Taylor Law [1969] [Report]). The Report emphasized the need to use impasse panels and other deterrentssuch as fines and imprisonmentin order to prevent illegal strikes. Section 209-a was added in 1969 (L 1969, ch 24, § 7). Thus, at the same time that the Legislature added the section delineating improper practices to ensure that employers would adhere to the statute as a whole, the Legislature also included section 209-a (3) (now subd [6]), which provides: "In applying this section, fundamental distinctions between private and public employment shall be recognized, and no body of federal or state law applicable wholly or in part to private employment, shall be regarded as binding or controlling precedent."
The thrust of this section is to reinforce the point that public employees in the state do not have the same right to strike as those employees covered by the NLRAnot that state employees do not have the same rights to participate in union activity (see A. Baldwin, Weingarten and the Taylor LawA Claimed Difference Without Distinction, 7 Hofstra Lab LJ 123, 145, 152-153, and passim [Fall 1989]). Indeed, it is likely that the main reason that section 202 does not include the words, "mutual aid or protection" is to bar strikesand section 209-a (6) was meant to reinforce that point.
In the 1969 Report, the panel wrote:
"Our recommendations included an extension of rights to government employees which had never previously been accorded in New York State. At the same time, we reiterated certain long-standing obligations of government employees to the public whom they serve. The basic principles for accommodating the rights of employees and the rights of the public, in our considered judgment, have been expressed in the Taylor Law. Effectuation of those principles in a sound manner is a long-term undertaking. *240 With experience under the Law will come an understanding of the changes in policy and in administrative procedures which are required to deal with the problems which arise.
"For the continuing sound development of constructive employee relations in the public sector, it is imperative to the achievement of solutions of these problems to enlist the continuing advice and cooperation of leaders of labor and management representatives in both the private and public sectors. The evolution of government-employee relations would benefit greatly, particularly at the present stage, from such advice and cooperation" (Report at 23-24).
The panel recommended that a Public Employment Relations Advisory Council be established to include representatives of the public and private sectors to work "for the common objective of achieving equity for public employees and protection of broad public interests" (Report at 24). "While recognizing the differences between private and public employment, [the Council] could bring to bear upon the problems of the public sector the best experience of the more mature private sector" (Report at 25). The goal of the 1969 amendments was not to distinguish all Taylor Law rights from rights granted under the NLRA but to underscore the need for government employees not to engage in work stoppages, in exchange for which they would be permitted to participate in a union.
The Court in Rosen, as the majority indicates, did interpret the Taylor Law to be more restrictive than the NLRA: "Manifestly, the Legislature sought to exclude from a statutory scheme regulating public employment certain rights and advantages conferred upon those in the private sector (see, e.g., Civil Service Law § 200 [public employees have no right to strike])" (Rosen, 72 NY2d at 50 [emphasis added]). In addition, the Court determined that PERB correctly found that the Taylor Law does not protect unorganized activity (id.). As to section 209-a (6), the Court stated:
"To be sure, this provision prohibits reliance on the NLRA itself, and case law interpreting that statute, as mandating a particular result. It does not, however, prohibit a comparison of the two statutes and the body of case law interpreting each in order to ascertain the meaning of provisions in the Taylor *241 Law, and to discern our Legislature's intent in drafting them" (id. at 51).
While the comparison between the Taylor Law and the NLRA in Rosen highlighted the differences between an "employee organization" as defined in section 201 of the Taylor Law and an unorganized group of individuals, here public and private employees represented by a union are in essentially the same positionseeking to participate in a protected union activity of getting advice from a union representative when discipline is an issue. I take guidance from the Weingarten decision that representation in the circumstances of an employee's reasonable fear that an investigatory interview may result in discipline is consistent with the "most fundamental purposes" of the Taylor Law (see Weingarten, 420 US at 261).
Nor will granting a Weingarten right deter collective bargaining. On the contrary, bargaining over procedures is mandatory even for a subject "treated by statute," and "the presumption is that all terms and conditions of employment are subject to mandatory bargaining" (Matter of City of Watertown v State of N.Y. Pub. Empl. Relations Bd., 95 NY2d 73, 79 [2000] [citations omitted]).
Moreover, the 1993 amendments in Civil Service Law § 75 do not foreclose a finding of a Weingarten right in the Taylor Law. The underlying policies of the Taylor Law and section 75 address different issues. It is possible, for example, for an employee to be terminated following a section 75 hearing, but then be reinstated after PERB finds that the employer committed an improper practiceperhaps discrimination or retaliation (see Matter of City of Albany v Public Empl. Relations Bd., 57 AD2d 374 [3d Dept 1977], affd 43 NY2d 954 [1978]). Section 75 sets forth procedures for imposing discipline in accordance with due process. Section 75 (2) provides that an employee has a right to representation at the time of questioning and "shall be notified in advance, in writing, of such right." Section 75 (2) also provides for a representative when an employee has already been charged with a disciplinary infraction (see Matter of Ulster County Sheriff's Empls. Assn. [County of Ulster], 26 PERB ¶ 3008 [1993]). The rationale for ensuring that an employer does not "interfere" with a bargaining unit member's representation before the formal filing of charges is to attempt to balance the equities between the power of the employer and the vulnerability of the employee. Deferring representation makes it "increasingly difficult for the employee to vindicate himself, *242 and the value of representation is correspondingly diminished" (Weingarten, 420 US at 263-264). That the Legislature chose to add a right to section 75 that an employee be represented is by no means dispositive that the right to have representation upon request at an investigatory interview is excluded in the Taylor Law.
Komarnitskiy, whose native language is not English, was taken into a Superintendent's office behind closed doors following an attempt to exonerate himself. I do not diminish the seriousness of the alleged offense. Nor is it appropriate to address whether the representative and Komarnitskiy improperly completed the G-2. But just like the lunch counter worker in Weingarten, Komarnitskiy, as a Car Inspector, was in a vulnerable position. The TA, in violation of section 209-a (1) (a), denied a union member the right to seek advice and support from his union representativethe right to participate in his employee organization. My hope is that the Legislature will enact, and the Governor will sign into law, an amendment to make explicit in the Taylor Law what to my mind is now implicit.
Order reversed, etc.