Francis DOWNING, Plaintiff, Appellant,

v.

Francis LeBRITTON et al., Defendants, Appellees.

No. 76–1439.

United States Court of Appeals, First Circuit.

March 4, 1977.

Michael C. Moyers, Concord, N.H., with whom Cleveland, Waters & Bass, Concord, N.H., was on brief, for appellant.

Andrew D. Dunn, Manchester, N.H., with whom Devine, Millimet, Stahl & Branch,

Manchester, N.H., was on brief, for appellees.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Appellant, a mentally retarded adult, was hired, with the knowledge of his condition, by the University of New Hampshire as a groundskeeper. After working for several years, he was criticized for his work performance in November of 1975 and terminated in December.[1] He thereupon, with the help of a fellow employee, invoked the first step of a five stage grievance and post-termination procedure by meeting with his immediate supervisor, a foreman. This not resulting in a favorable resolution, appellant, assisted by another University employee (the president of a chapter of the State Employees' Association of New Hampshire to which appellant belonged) took the second step—a meeting with his foreman's supervisor. The third step, a meeting with the University's personnel director, was sought by appellant, who asked to be represented by the local field representative of the State Employees' Association, who was not an employee of the University.[2] The personnel director refused to proceed with the hearing, since University regulations provided that an employee could only be represented by a fellow employee. When appellant's attorney asked to appear at this hearing, the personnel director took the same position. Appellant refused to proceed without either the field representative or his attorney. Thus the third step was aborted and the remaining two stages, an appeal to the Appeal Board and a final appeal to the Provost, were never initiated.

Suit was brought in the district court, challenging on due process grounds the University's regulation preventing appellant from having the representative of his choice. The court held, on May 11, 1976, that appellant had a protected property interest and that he was entitled to "choose his own representative without arbitrary restrictions." Shortly thereafter the Supreme Court issued its opinion in *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Defendants filed a motion for reconsideration which the court granted, deeming itself bound by *Bishop,* since it did not find in the law or University regulations any specific grant of a right to continued employment.

■ We are not sure that *Bishop v. Wood* so clearly compels the conclusion that appellant had no interest meriting due process protection. Under current doctrine, the existence or non-existence of such an interest depends on state law. The district court in its brief memorandum rescinding its prior order made no reference to such cases as *Blake v. New Hampshire,* 115 N.H. 431, 343 A.2d 223 (1975), which recognizes tenure for "good behavior" as a protected interest (citing Justice White's concurring and dissenting opinion in *Arnett v. Kennedy,* 416 U.S. 134, 181, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974)). The University's Support Staff Handbook not only states that non-probationary employees shall have a right to due process procedures, but adds that "it is expected that employment will be permanent following the probationary period", and that discharge will be for inadequate performance and other listed causes. Whether under the New Hampshire law as applied to these and other regulations appellant has a protectible property interest, we do not de-

---

1. The criticism leading to appellant's discharge involved his alleged lack of diligence, carefulness, and cooperativeness. The appellant's complaint lists seven areas for improvement initially mentioned by the Assistant Director of Services: "(i) complete tasks, (ii) don't wander, (iii) don't leave tools around, (iv) use care in the use of University equipment, (v) reduce talking with fellow employees and students, (vi) improve manner of response to superiors, and (vii) truly become a member of the team."

2. Appellant's letter of appeal to the personnel director, prepared with the assistance of the field representative, claimed that his immediate supervisor had no complaints, that most of his problems arose from a personality clash with his "lead worker", and that a change in his immediate supervisor would have eliminated all areas of concern.

cide, for, even assuming the existence of such an interest, we cannot on these pleadings and facts find a lack of sufficient due process.

Assuming arguendo that some process is due, we first summarize the process that is presently afforded under the University's procedures as set forth in its Support Staff Handbook. A termination action must be preceded by a supervisor's placing the employee on probationary status for thirty days or longer. But prior to such placement the Personnel Office must be consulted and the supervisor must prepare a Job Performance Rating and discuss problem areas with the employee and send a letter to the employee stating the conditions of probation. If "the normal minimal expectations" of the supervisor are not met, termination follows, with the grievance procedure available to the employee.

The grievance procedure, as we have noted, consists of five steps. The first is an oral discussion with the employee's immediate supervisor. The employee may in this, as in the other steps, have the assistance of any other employee of the University, who has the right to discuss the complaint with other employees in the work area and to participate in the meeting. The supervisor must respond within three work days, the Handbook expressing the hope that most complaints will be resolved at this step. Failing resolution the affected employee may, within three work days of the immediate supervisor's decision, present his complaint orally to the dean, director, or equivalent officer to whom the immediate supervisor reports. An oral discussion is then held among this officer, the immediate supervisor, the employee and his fellow employee representative. Again a decision must be announced within three work days. If the decision is adverse the aggrieved employee may, within five work days, submit in writing, "all the facts pertaining to the grievance" to the Personnel Director. A meeting is then held and, within five work days of the meeting, the Personnel Director must render a decision in writing.

If the decision is again adverse, the employee or his representative may, within ten work days, require the Personnel Director to submit the written statement to the University's Appeal Board and may personally present the case. Decision must follow within five work days. Final appeal may be had directly to the Provost.

We make two additional observations. The first is that the reservoir of fellow employees available to represent an aggrieved employee is several thousand, ranging from immediate co-workers, to other service and support staff, the administration, and the faculty. The second is that the employee and his employee representative may, of course, have the continuing services of counsel in discussing his problem, planning his defense, and preparing his presentation. The only limitation is that a non-employee may not appear at the grievance meeting. As successive steps in the grievance process are taken, there is repeated opportunity to identify weaknesses in the charges made, to correct misunderstandings, and to strengthen the presentation. By the time of the third step, involving the first written presentation of the employee's case, the assistance of counsel in helping frame the presentation would most likely assure as effective a written presentation as the developed facts permit.

In determining whether this procedure comports with the dictates of due process, we realize the need to focus sharply on the competing interests of the parties, *Hannah v. Larche,* 363 U.S. 420, 440–44, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960); *Cafeteria Workers Local 473 v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); *Drown v. Portsmouth School District,* 435 F.2d 1182, 1184 (1st Cir. 1970), on a case-by-case basis, *Gagnon v. Scarpelli,* 411 U.S. 778, 790, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

With regard to appellant's interest in an unrestricted choice of representation, we note first that none of the cases in this area contemplate the situation presented by this case, where the appellant may choose a

lay representative from among a large but limited pool. *Cf. Gagnon v. Scarpelli, supra; Goldberg v. Kelly,* 397 U.S. 254, 270, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Free choice for its own sake does not strike us as a particularly compelling interest. Even in the context of a criminal trial the right to choose a specific attorney is not absolute, but is subject to the court's interest in orderly procedures. *See Maynard v. Meachum,* 545 F.2d 273, 278 (1st Cir. 1976).

■ Beyond this, it may be conceded, as the district court observed, that appellant was fighting for his job in a context that had become adversarial, and that, because he was mentally retarded, he might well have difficulty in presenting his version of the facts. *Cf. Gagnon v. Scarpelli, supra,* 411 U.S. at 790–91, 93 S.Ct. 1756; *Goldberg v. Kelly, supra,* 397 U.S. at 268–69 & n. 16, 90 S.Ct. 1011. But we disagree with the district court's conclusion that appellant's disability necessitated a broader choice of representation than other employees have. If non-legal assistance is contemplated, such as helping the aggrieved employee to recall facts and to communicate his position, we see no reason why an outsider would be preferable to a sympathetic and articulate fellow employee, such as the union agent who assisted appellant through steps one and two. While professional legal assistance in examining and cross-examining witnesses, or in discovering pertinent facts, might well increase an aggrieved employee's chances of success, *cf. Goldberg v. Kelly, supra,* 397 U.S. at 270, 90 S.Ct. 1011, this would be a benefit to any employee in a grievance or termination hearing. We thus perceive no principle by which a right to counsel or to outside representation can be limited to mentally retarded employees, or even to all similarly disadvantaged employees, such as those with limited education or literacy, language difficulty, or physical disability.

We deal here with factual charges that are not highly complex, a relatively routine personnel action in which the University will have to decide whether the immediate supervisor and/or appellant's "lead worker" are really the ones to blame rather than him. Particularly in a context where as here the series of steps in the grievance procedure contemplate informal meetings with the general objective of reaching resolutions which would avoid a decision to terminate, we would consider that even a disadvantaged employee would be able to make an effective presentation with the help of a fellow employee. Moreover, there is no allegation or suggestion that appellant has been or will be unable to present his case fully in the various levels of decision-making. So far as this record is concerned, appellant and his University representative have made as effective a presentation as any other aggrieved employee would have made. No reason is advanced why he would not have been similarly effective had he completed the procedure.

■ Thus, for purposes of assessing the impact and potential burden on the University, we believe that appellant's position requires recognition of a general constitutional right in all public employees to choose outside representation. It is true, as the district court noted, that the University has none of the rehabilitation or security interests that weighed against the right to counsel in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Gagnon v. Scarpelli, supra; Wolff v. McDonnell,* 418 U.S. 539, 570, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); and *Baxter v. Palmigiano,* 425 U.S. 308, 314–15, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). However, the University does have traditionally broad discretion in administering its internal affairs, *cf. Chung v. Park,* 514 F.2d 382, 387 (3d Cir. 1975). The insertion of counsel or other non-University representation into termination proceedings would stimulate lawyer representation of the University and perhaps others; would formalize the hearings and force them into an adversary mold; would cast a litigation chill on decisions to terminate; and would increase the likelihood that many otherwise ordinary personnel actions would become causes celebres.

The district court intimated that the burden on the University should be viewed differently if the employee chooses an outside representative who is not a lawyer. Many laymen, such as a professional union negotiator, could have the same formalizing impact on the proceedings as a lawyer would, without whatever contribution to orderly proceedings can be expected from the lawyer's discipline. To the extent, however, that the University would be less burdened by the presence of an outside lay representative, we think the employee's interest in choosing such a representative, rather than a layman from the University, is also comparatively weak.

The informality of the procedures, the repeated opportunity for review, the provision for a written statement for use before the Personnel Director and the Appeal Board, the University-wide pool of possible representatives, and access to counsel for preparation and advice seem to us a generally sufficient guaranty of fairness. These, in light of the burdens which would be placed on the University by allowing counsel to participate actively in the grievance procedure, lead us to conclude that, absent a specific showing of inadequate opportunity to defend, a right of counsel is not constitutionally required for an employee, even though he may be mentally retarded. Nor have we been pointed to any case authority to the contrary. It follows that there is even less reason, on these facts, to extend an unrestricted right to choose lay representation.

*Affirmed.*