## Town of Hudson *vs.* Labor Relations Commission.

No. 06-P-1191.

Suffolk. March 20, 2007. - July 12, 2007.

Present: Duffly, Dreben, & Meade, JJ.

*Labor,* Public employment, Unfair labor practice. *Municipal Corporations,* Unfair labor practice, Police. *Labor Relations Commission.*

The Labor Relations Commission permissibly construed G. L. c. 150E, § 2, in holding that an employee was entitled to representation by a union attorney during an investigatory interview, and correctly concluded that the employer had engaged in a prohibited practice by refusing to allow such representation. [551-557]

Appeal from a decision of the Labor Relations Commission.

*Kimberly A. Rozak* for the plaintiff.

*Cynthia A. Spahl* for the defendant.

*Peter J. Perroni* for New England Police Benevolent Association, Local 14.

Dreben, J. The town of Hudson appeals from a decision of the Labor Relations Commission (commission) that the town engaged in a prohibited practice by refusing to allow an attorney employed by the International Brotherhood of Police Officers, Local 363[1] (union), to serve as a *Weingarten* representative, see *National Labor Relations Bd.* v. *J. Weingarten, Inc.,* 420 U.S. 251 (1975) (*Weingarten*), at an investigatory interview.[2] We affirm the decision, concluding that the commission's hold-

---

[1]Subsequent to the decision of the commission, this court allowed the motion of the New England Police Benevolent Association, Local 14, to be substituted as successor-in-interest to the International Brotherhood of Police Officers, Local 363.

[2]As will be discussed more fully, *infra, Weingarten, supra* at 260-261, upheld a National Labor Relations Board ruling that, on request, an employee is entitled to the presence of a union representative at an investigatory interview that the employee reasonably believes might result in disciplinary action.

ing that a union attorney may serve as a *Weingarten* representative is a permissible construction of G. L. c. 150E, § 2, by the commission, the agency charged by the Legislature with enforcement of the statute. See *Weingarten,* 420 U.S. at 260.

The original charges of prohibited practice brought by the union were dismissed, but on reconsideration, the commission, while dismissing other charges, issued a complaint, described in its opinion as alleging that "the Town had violated § 10(a)(1) of [G. L. c. 150E[3]] by preventing Jose Chaves, . . . a patrol officer employed by the Town, from having a Union representative present at an investigation that Chaves could have reasonably believed would lead to discipline." Following a hearing and findings by a hearing officer, the commission adopted, with minor modifications, those findings.

1. We summarize the facts as found by the commission. They are not in dispute. The union is the exclusive collective bargaining representative of the unit of police sergeants and patrol officers employed by the town. Chaves is a member of that unit.

In a letter dated January 4, 1999, Chaves's supervisor, Sergeant Michael Burks, notified Chaves that Burks would like to interview him on January 12 or 13. The reason was that Chaves was the subject of an internal investigation because of disparaging remarks allegedly made by him to supervisory personnel. After receiving the notice, Chaves contacted Bernard Loughane, the union's national representative for the Worcester area who was specifically assigned to represent Chaves's bargaining unit, and requested that a union representative accompany him to the interview. Chaves believed that Loughane would be handling the matter and did not request that his union representative be an attorney. Because of a scheduling conflict, Loughane asked Marc Terry, then legal counsel for the union, to accompany Chaves.

Prior to the interview, Chaves and Burks discussed the upcoming interview and disagreed whether Chaves could have

---

[3]General Laws c. 150E, § 10(*a*), inserted by St. 1973, c. 1078, § 2, provides:

"It shall be a prohibited practice for a public employer or its designated representative to:

"(1) Interfere, restrain, or coerce any employee in the exercise of any right guaranteed under this chapter."

an attorney as his union representative. When Terry and Chaves arrived for the interview on January 12, Burks did not permit Terry to accompany Chaves into the interview room on the ground that Terry was an attorney. When Terry asked what would happen if Chaves refused to participate, Burks answered that if Chaves did not agree to attend the interview voluntarily, he would have to order Chaves into the interview. Both Terry and Chaves believed that the latter had no choice and would be disciplined if he did not enter the interview room. Terry advised Chaves to participate in the interview, to answer truthfully, and not to worry "too much" about what he said because any information obtained could not be used to discipline him as Burks had denied Chaves his *Weingarten* rights. Chaves participated in the interview and did not request an alternate union representative, believing he was entitled to be represented by Terry.

2. In ruling that the town violated G. L. c. 150E, § 10(*a*)(1), the commission started its analysis with the general principles of *Weingarten*, 420 U.S. at 260-264. These principles guide the commission, *Suffolk County Sheriff's Dept.*, 28 M.L.C. 253, 259 (2002), were adopted by it, and are applied in cases involving G. L. c. 150E, § 2. *Massachusetts Correction Officers Federated Union* v. *Labor Relations Commn.*, 424 Mass. 191, 193 (1997).

In *Weingarten, supra* at 252, the United States Supreme Court affirmed the holding of the National Labor Relations Board (NLRB) that the denial by an employer of "an employee's request that her union representative be present at an investigatory interview which the employee reasonably believed might result in disciplinary action constituted an unfair labor practice" under the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151 et seq. (1970). This was so because the denial of the request "interfered with, restrained, and coerced the individual right of the employee, protected by § 7 of the NLRA, 'to engage in . . . concerted activities for . . . mutual aid or protection . . .' " (citation omitted). *Weingarten, supra* at 252. The Supreme Court pointed out, *id.* at 260, that the "action of an employee in seeking to have the assistance of his union representative at a confrontation with his employer clearly falls within the literal wording" of the language of § 7 of the NLRA. Continuing, the Supreme Court stated:

"This is true even though the employee alone may have an immediate stake in the outcome; he seeks 'aid or protection' against a perceived threat to his employment security. The union representative whose participation he seeks is, however, safeguarding not only the particular employee's interest, but also the interests of the entire bargaining unit by exercising vigilance to make certain that the employer does not initiate or continue a practice of imposing punishment unjustly. The representative's presence is an assurance to other employees in the bargaining unit that they, too, can obtain his aid and protection if called upon to attend a like interview." *Id.* at 260-261.

The words of § 7 of the NLRA, quoted by the Supreme Court, are almost identical to the words in G. L. c. 150E, § 2, as set forth in the margin.[4]

The parties stipulated that the January 12, 1999 meeting was investigatory, and the commission ruled that Chaves had a right to union representation. The question, therefore, was whether Chaves's right to union representation extended to a union attorney. Noting that there are no commission cases directly discussing this question, the commission reviewed the Federal decisions.

Two cases, *Montgomery Ward & Co.*, 269 N.L.R.B. 904 (1984), and *Consolidated Casinos Corp.*, 266 N.L.R.B. 988 (1983), relied on by the town, hold that an employee's *personal* attorney may not serve as a *Weingarten* representative. The commission, by quoting from the opinions of the administrative law judges (ALJ) in those cases, pointed out the reasons for

---

[4]In relevant part G. L. c. 150E, § 2, inserted by St. 1973, c. 1078, § 2, provides: "Employees shall have the right of self-organization and the right to form, join, or assist any employee organization for the purpose of bargaining collectively through representatives of their own choosing on questions of wages, hours, and other terms and conditions of employment, and to engage in lawful, concerted activities for the purpose of collective bargaining or *other mutual aid or protection*, free from interference, restraint, or coercion" (emphasis supplied).

In relevant part 29 U.S.C. § 157 (1970) provides: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or *other mutual aid or protection . . .*" (emphasis supplied).

excluding personal attorneys. The commission quoted from *Montgomery Ward & Co., supra* at 911, as follows[5]:

> "The basic difficulty with this contention [that the *Wein-garten* right should be extended to include a request for a lawyer] is that, as pointed out by the Supreme Court in *Weingarten*, the right to representation is based on the employee's statutory right under Section 7 of the [NLRA] to engage in concerted activities with other employees. Exercise of such a right does not appear to extend to an outside professional such as a lawyer uninvolved in the employer-employee relationship." (Footnote omitted.)

The following was said by the ALJ in *Consolidated Casinos Corp.*, 266 N.L.R.B. at 1008[6]:

> "[A]n employee who requests the presence of a coworker or a union representative . . . is also clearly acting in [the] spirit of mutual aid and protection. All will stand together. An employee who requests the presence of his *personal* lawyer, however, is not invoking the support of the lawyer as part of a common cause with others. . . . The employee is . . . seeking personal assistance for his own cause and no other. Such activity is not for mutual aid or protection."[7] (Emphasis supplied.)

The reasoning rejecting an employee's representation by a personal attorney does not apply to a union representative who is an attorney. The commission took note of a case under § 7114(a)(2)(B) of the Federal Service Labor-Management Relations Statute (FSLMRS), 5 U.S.C. §§ 7101 et seq. (1978),

---

[5]In *Montgomery Ward & Co., supra* at 904, the ALJ's decision was reversed but the NLRB affirmed his rulings, findings, and conclusions "to the extent consistent with this Decision and Order."

[6]In *Consolidated Casinos Corp., supra* at 988, the NLRB affirmed the rulings, findings, and conclusions of the ALJ and adopted his recommended order.

[7]In *Consolidated Casinos Corp., supra* at 1010-1011, the employer denied two requests of one of its employees. One request was for representation by an attorney engaged by an employee committee. The other request was deemed by the ALJ to be for the presence of a fellow employee. Because the employer denied the second request, the ALJ found it unnecessary to decide whether the committee's attorney was "entitled to the same considerations as a representative of a traditional labor organization."

a statute patterned after the *Weingarten* rule,[8] recognizing, however, that the FSLMRS differed from the NLRA.[9] In *Federal Prison Sys., Fed. Correctional Inst., Petersburg*, 25 F.L.R.A. 210, 230-231 (1987), the employer had rejected the union's designated representative because he was an attorney. The Federal Labor Relations Authority affirmed the ALJ's finding that the employer had violated § 7114(a)(2)(B) of the FSLMRS by interfering with the right of the union to have an attorney as its designated representative at an investigatory interview. *Id.* at 212.

After discussing the authorities, the commission concluded that Chaves was entitled to be represented by Terry at the January 12, 1999 meeting and that the town had engaged in a prohibited practice.[10] The commission pointed out that:

> "Chaves did not request to be represented by his personal attorney or outside counsel uninvolved in the employer-employee relationship. Instead, Chaves requested to be represented in an investigatory interview by an attorney assigned from his own Union. Under these circumstances,

[8]See *National Aeronautics & Space Admin.* v. *Federal Labor Relations Authy.*, 527 U.S. 229, 236 (1999).

[9]Section 7114(a)(2) of title 5 of the United States Code (1994) is much more explicit in its provision for union representation at investigatory interviews:

> "An exclusive representative of an appropriate unit in an agency shall be given the opportunity to be represented at —

> ". . .

> "(B) any examination of an employee in the unit by a representative of the agency in connection with an investigation if —

> "(i) the employee reasonably believes that the examination may result in disciplinary action against the employee; and

> "(ii) the employee requests representation."

[10]As noted by the commission, if an employee makes a valid *Weingarten* request for a union representative, the employer has three options: (1) grant the request; (2) discontinue the interview; or (3) offer the employee a choice between continuing the interview unaccompanied by a union representative or having no interview at all. See *United States Postal Serv.*, 241 N.L.R.B. 141, 141 (1979); *Commonwealth of Mass.*, 10 M.L.C. 1156, 1161 (1983). The employer may not continue the interview, as the town did here, without giving the employee the foregoing choices.

therefore, Terry cannot reasonably be characterized as an outside professional 'uninvolved in the employer-employee relationship.' Compare *Montgomery Ward & Co. Inc.*, 269 NLRB at 911. Nor was Terry present at the investigatory interview solely to protect Chaves' 'personal interests.' Compare *Consolidated Casinos Corp.*, 266 NLRB at 1008. Instead, Terry's role at the interview as a Union attorney was to safeguard the interests of Chaves, the Union, and its members. Therefore, for purposes of representation at a *Weingarten* interview, we see no distinction between representation by a union representative or business agent and representation by a union attorney."

3. Subsequent to the commission's decision, the Commonwealth Court of Pennsylvania decided a case supportive of the commission's decision. In *Cheltenham Township* v. *Pennsylvania Labor Relations Bd.*, 846 A.2d 173, 179 (Pa. Commw. 2004), the court upheld a determination of the Pennsylvania Labor Relations Board (PLRB) that Cheltenham Township violated an employee's *Weingarten* rights by not allowing him to be represented by an attorney retained by the union to represent its members in investigatory interviews.[11] The PLRB had held that the union could designate an attorney who was not a member of the bargaining unit as representative. *Id.* at 175. The court concluded that the NLRB rulings that private attorneys were not proper *Weingarten* representatives were not relevant:

"[T]hose cases dealt with the situation where an employee requested the aid of his own private attorney during the investigative interview, whereas in this case, the employee requested the aid of the Union's chosen attorney to represent all employees during investigatory interviews." *Id.* at 175-176.

In upholding the PLRB, the court addressed the criticism of the township that the decision would "transform an informal,

---

[11]The court noted, *id.* at 177, that the language in § 5 of the Pennsylvania Labor Relations Act was "identical" to the language in § 7 of the NLRA. See note 4, *supra*, indicating that the Massachusetts statute, in relevant part, also contains the language of § 7 of the NLRA.

fact-finding process into an adversarial one,"[12] noting that the fact a person "happens to be an attorney, . . . is of no moment because that person . . . cannot act as the 'individual's attorney.' " *Id.* at 178, 179.[13]

4. In reviewing the commission's decision under G. L. c. 30A, § 14, see G. L. c. 150, § 11, we "must accord deference to the commission's specialized knowledge and expertise, and to its interpretation of the applicable statutory provisions." *Worcester* v. *Labor Relations Commn.*, 438 Mass. 177, 180 (2002). As pointed out in *Weingarten*, 420 U.S. at 266, "The responsibility to adapt the [NLRA] to changing patterns of industrial life is entrusted to the [NLRB]. . . . It is the province of the [NLRB,] not the courts, to determine whether or not the 'need' [for representation] exists," and also to determine who may be designated a union representative.

As indicated in its discussion, the basis for the commission's decision is that, unlike an employee's personal attorney, a union attorney's role as a *Weingarten* representative is to protect the rights of the employee, the union, and its members. The determination that a union attorney may be a *Weingarten* repre-

---

[12]This is the same criticism the town makes in this case, citing *Downing* v. *LeBritton*, 550 F.2d 689 (1st Cir. 1977). Not only is *Downing* inapposite because it did not involve the three-party relationship of the employer, the union, and the employee, but the employee there requested his own personal lawyer. See *id.* at 690. The reasoning of the Pennsylvania court effectively counters the town's criticism. See note 13, *infra*.

[13]The court elaborated, *Cheltenham Township* v. *Pennsylvania Labor Relations Bd.*, 846 A.2d at 179:

> "He or she instead is limited to the types of assistance that a non-attorney could give because the role of a *Weingarten* representative is a limited one aimed at assisting the employee during the process; helping the employee state facts favorable to the employee's situation; helping the employer find out the truth regarding the incident in question; and, significantly, protecting the interest of the bargaining unit. So long as the interview remains non-adversary in nature and maintains the format of informal fact-finding, whether the 'outside representative' happens to be an attorney is irrelevant because that person is not acting as an attorney, and attorney-client privileges do not attach. If, as the Township suggests, attorneys cannot 'change their spots' and begin to act in an adversarial manner during the hearing because of their training, then the Township can terminate the interview and pursue available remedies against the employee and the union for the employee's failure to cooperate in the investigatory process."

sentative is a permissible construction of G. L. c. 150E, § 2, and is consistent with the authorities and the purpose of the provision. Accordingly, we affirm the decision of the commission.

*So ordered.*