# IN THE SUPREME COURT OF TEXAS

═══════════
No. 10-0666
═══════════

THE CITY OF ROUND ROCK, TEXAS AND
ROUND ROCK FIRE CHIEF LARRY HODGE, PETITIONERS,

v.

JAIME RODRIGUEZ AND ROUND ROCK
FIREFIGHTERS ASSOCIATION, RESPONDENTS

═══════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS
═══════════════════════════════════════════════════════

**Argued December 8, 2011**

CHIEF JUSTICE JEFFERSON, joined by JUSTICE HECHT and JUSTICE LEHRMANN, dissenting.

Fire fighter Jaime Rodriguez learned that his employer, the City of Round Rock, planned to interview him about a personnel complaint his chief[1] had filed against him. The chief told Rodriguez that, at best, his alleged misreporting of 2.5 hours of sick leave could result in discipline, including termination of his employment. At worst, Rodriguez could face criminal charges.[2] The battalion chief ordered Rodriguez not to discuss the investigation with his union president or any of its

---

[1] Unless otherwise noted, references to the "chief" are to Fire Chief Larry Hodge.

[2] The chief advised Rodriguez that although his answers could not be used against him in a criminal case, they could affect his employment status. In *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967), the Supreme Court held that statements obtained from law enforcement officers and other public employees under threat of discharge could not be used in subsequent criminal proceedings against those individuals.

members; if Rodriguez did so, he would be subject to disciplinary action for violating a direct order. The chief ordered Rodriguez to appear in person, unrepresented, for an interview in the fire chief's office. At that interview, the chief, the assistant fire chief, and the battalion chief interrogated Rodriguez for forty-five minutes. Rodriguez asked that a union representative be permitted to attend the meeting, but the chief refused. Later, the chief met once more with Rodriguez (still unrepresented) and told him that he either had to agree to a five-shift suspension and waive appellate and grievance rights, or be discharged. Rodriguez chose the former.

A Texas statute guarantees employees the right to unionize for job protection.[3] We must decide whether that includes a "representation right,"[4] which permits an employee to have a union representative accompany him when his employer conducts an interview that foreshadows disciplinary action. For decades, private and federal employees have exercised this right, as have Texas public sector employees acting under our statute and the only existing precedent.[5] But in Texas, after today, state and local government employees must go it alone. The Court concedes that the statute permits unionization, but precludes a prime attribute that makes the union worthwhile. Precedent does not compel this anomaly. Nor does a proper reading of the relevant law. I would hold that the statute grants Texas public employees a representation right, much as the Supreme

---

[3] *See* TEX. LAB. CODE § 101.001.

[4] The right is also known as the *Weingarten* right, based on the Supreme Court's decision in *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251 (1975).

[5] *See Glen v. Tex. State Emps. Union—CWA/AFL–CIO, No. 13,723* (Tex. App.—Austin Sept. 1, 1982, no writ) (not designated for publication).

2

Court of the United States has concluded under a similar federal law. Because the Court holds otherwise, I respectfully dissent.

## I. The Labor Code grants public employees the right, upon request, to union representation at an interview at which the employee reasonably believes he may be subject to discipline.

Largely unchanged since its passage more than a century ago, Labor Code section 101.001 states that "[a]ll persons engaged in any kind of labor may associate and form trade unions and other organizations to protect themselves in their personal labor in their respective employment."[6] TEX. LAB. CODE § 101.001. The statute does not state that employees have the right, upon request, to have a union representative participate in an internal interview when the employee reasonably believes that the interview may lead to disciplinary action. The question is whether such a right inheres in an employee's freedom to "associate and form trade unions . . . to protect themselves in their personal labor in their respective employment." *Id*.

Despite the statute's age, only two Texas cases have answered this question—the court of appeals' decision in this case and an earlier, unpublished decision from the same court.[7] Both held

---

[6] The original text stated:

[I]t shall be lawful for any and all persons engaged in any kind of work or labor, manual or mental, or both, to associate themselves together and form trades unions and other organizations for the purpose of protecting themselves in their personal work, personal labor, and personal service in their respective pursuits and employments.

Act of May 27, 1899, 26th Leg., R.S., ch. 153, 1899 Tex. Gen. Laws 262, 262 (amended 1993)(current version at TEX. LAB. CODE § 101.001). The statute underwent a nonsubstantive codification in 1993. *See* Act of May 22, 1993, 73rd Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 987, 1028.

[7] *See* 317 S.W.3d 871; *Glen*, No. 13,723, slip op. at 8 (holding that Texas statute gave Rusk State Hospital employees the right to union representation at patient abuse interviews).

3

that the statute gives an employee the right to union representation during internal interviews that might have disciplinary repercussions. Both cases relied on a United States Supreme Court decision interpreting similar language in the National Labor Relations Act. *See NLRB v. J. Weingarten, Inc.*, 420 U.S. 251 (1975).

*Weingarten* involved judicial review of an NLRB decision. Of course, we are not bound by *Weingarten*. Our statute was not based on the NLRA, nor does this case involve an appeal of an administrative decision, as *Weingarten* did. Nonetheless, the Supreme Court's interpretation of a statute very similar to our own is instructive. *See, e.g.*, *Sayre v. Mullins*, 681 S.W.2d 25, 28 (Tex. 1984) (applying Supreme Court's interpretation of "condition of work" in NLRA to Texas statute governing grievance rights); *Lunsford v. City of Bryan*, 297 S.W.2d 115, 117 (Tex. 1957) (interpreting Texas's "right to work" statute in light of the Supreme Court's determination that NLRA prohibited firing employees because of union membership); *see also, e.g.*, *Barr v. City of Sinton*, 295 S.W.3d 287, 296 & n.42 (Tex. 2009) (considering decisions applying federal statutes because those statutes and Texas law were "animated in their common history, language, and purpose").

The NLRA grants private employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in *other concerted activities for the purpose of* collective bargaining or other *mutual aid or protection* . . . ." 29 U.S.C. § 157 (emphasis added). In *Weingarten*, the National Labor Relations Board held that an employer violated the Act when it denied an employee's request that her union representative attend an investigatory interview that the employee reasonably believed might result

4

in disciplinary action. *Weingarten*, 420 U.S. at 252. The United States Court of Appeals for the Fifth Circuit held that the NLRB's construction was wrong, but the Supreme Court reversed. *Id*. at 253.

The Court held that the right "*clearly falls within the literal wording* of [the statute] that '[employees] shall have the right . . . to engage in . . . concerted activities for the purpose of . . . mutual aid or protection.'" *Id*. at 260 (emphasis added). It reasoned that although the employee's predicament may not implicate collective rights, he nevertheless seeks "aid or protection" against a perceived threat to his job. *Id*. The union representative protects not only the particular employee's interest but that of the "entire bargaining unit by exercising vigilance to make certain that the employer does not initiate or continue a practice of imposing punishment unjustly." *Id*. at 260-61. The Court noted that "the right inheres in [the statute's] guarantee of the right of employees to act in concert for mutual aid and protection." *Id*. at 256. The Court also emphasized the right's limited nature. It arises only when the employee requests representation and is a member of a labor union. *See id*. at 257. Moreover, the employee's right to do so is limited to situations that he reasonably believes will lead to disciplinary action and when exercising the right does not interfere with legitimate employer prerogatives.[8] *Id*. at 257-58. Finally, the employer has no duty to bargain with any union representative who attends an investigatory interview. *Id*. at 259.

---

[8] The Court also noted that the employer could refuse, without explanation, to allow union representation and carry on its inquiry without interviewing the employee, "thus leav[ing] to the employee the choice between having an interview unaccompanied by his representative, or having no interview and forgoing any benefits that might be derived from one." *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 258 (1975).

The Court observed that union representation, much like legal representation, may advance both parties' interests. The representative can help an employee form a defense, because employees "may be too fearful or inarticulate to relate accurately the incident being investigated, or too ignorant to raise extenuating factors." *Id.* at 263. Representation at the interview is preferable to pursuing a grievance afterwards, as "it becomes increasingly difficult for the employee to vindicate himself, and the value of representation is correspondingly diminished. The employer may then be more concerned with justifying his actions than re-examining them." *Id.* at 263-64. The employer may benefit as well, because a knowledgeable representative can streamline the investigation and may promote a more informed decision.[9] *Id.* at 263.

In Texas, the representation right would exist even without the *Weingarten* case and the federal statute it construed. Our statute says employees may unionize for "protect[ion]." TEX. LAB. CODE § 101.001. This case asks what that word describes. Statutes omitting that concept have been held not to convey the right to union participation in employer interviews;[10] laws that include it do.[11]

---

[9] The NLRA applies only to private employers. 29 U.S.C. § 152(2). After *Weingarten*, Congress passed a law granting the *Weingarten* right to federal government employees. 5 U.S.C. §§ 7101(b), 7114(a)(2)(B). Our statute, broadly applicable to "[a]ll persons engaged in any kind of labor," predated all of these. TEX. LAB. CODE § 101.001. The City concedes, for purposes of this appeal, that section 101.001 applies to public employees.

[10] *See, e.g.*, *Johnson v. Express One Int'l, Inc.*, 944 F.2d 247, 251 (5th Cir. 1991) (holding that "the absence of the explicit right 'to engage in other concerted activities for the purpose of . . . other mutual aid or protection' in the [Railway Labor Act] proves fatal" to petitioner's claim that the Act granted the *Weingarten* right); *N.Y. City Transit Auth. v. N.Y. State Pub. Employment Relations Bd.*, 864 N.E.2d 56, 57-58 (N.Y. 2007) (holding that New York statute that gave public employees the right to "form, join, and participate in . . . any employee organization of their own choosing" did not confer the *Weingarten* right; "Since the 'mutual aid or protection' language is absent from [the New York statute], *Weingarten* does not support a holding that [the statute] creates a *Weingarten* right").

[11] *See, e.g.*, *City of Clearwater v. Lewis*, 404 So.2d 1156, 1161-63 (Fla. Dist. Ct. App. 1981) (applying *Weingarten* and holding that Florida statute granting public employees the right to engage in concerted activities for "mutual aid or protection," contained language "similar" to NLRA § 7); *Town of Hudson v. Labor Relations Comm'n*,

I am perplexed by the Court's conclusion that "Section 7 [of the NLRA] does not expressly confer the *Weingarten* right, and the Supreme Court recognized that." ___ S.W.3d at ___. In fact, the Supreme Court held that the right "*clearly falls within the literal wording of § 7* that '[employees] shall have the right . . . to engage in . . . concerted activities for the purpose of . . . mutual aid or protection.'" *Weingarten*, 420 U.S. at 260 (emphasis added). Here, the Court declines to recognize a representation right in part because the Labor Code does not include the NLRA's "'concerted activities' language." ___ S.W.3d at ___. But Texas has given employees not just the ability to unionize—already a constitutional right[12]—but the right to do so "*to protect themselves in their personal labor in their respective employment*." TEX. LAB. CODE § 101.001 (emphasis added). How can unions protect employees' jobs if they cannot engage in conduct to protect employees' jobs? Rodriguez was not only denied representation during the meeting; his employer prohibited him from even seeking his union's advice, *before the meeting*, about how to defend against a disciplinary matter that could culminate in termination of his employment and criminal proceedings. To Rodriguez, the union is an oasis; to the Court, only a mirage. The *Weingarten* court agreed with

870 N.E.2d 618, 620-21 & n.4 (Mass. Ct. App. 2007) (applying *Weingarten* to Massachusetts statute that granted employees the right to "engage in lawful, concerted activities for the purpose of . . . mutual aid or protection"); *Wayne-Westland Educ. Ass'n v. Wayne-Westland Community Schools*, 439 N.W.2d 372, 373 (Mich. App. 1989) (affirming state labor commission's application of *Weingarten* right under Michigan statute granting public employees the right to engage in "lawful concerted activities for the purpose of . . . mutual aid and protection"); *Office of Admin. v. Pa. Labor Relations Bd.*, 916 A.2d 541, 548-49 (Pa. 2007) (holding that Pennsylvania statute authorizing "lawful concerted activities for the purpose of collective bargaining or other mutual aid and protection" granted the *Weingarten* right).

[12] *See Hitt v. Connell*, 301 F.3d 240, 245 (5th Cir. 2002) ("The First Amendment protects a public employee's right to associate with a union."); *Boddie v. City of Columbus, Miss.*, 989 F.2d 745, 749 (5th Cir. 1993) ("'This right of association encompasses the right of public employees to join unions and the right of their unions to engage in advocacy and to petition government in their behalf.'") (quoting *Prof'l Ass'n of Coll. Educators, TSTA/NEA v. El Paso Cnty. Cmty. Coll. Dist.*, 730 F.2d 258, 262 (5th Cir. 1984), *cert. denied*, 469 U.S. 881 (1984)).

Rodriguez's view, holding that the employee may bring a union representative to the meeting for "'aid or protection' against a perceived threat to his employment security." *Weingarten*, 420 U.S. at 260. I would hold, as the court of appeals did, that the Texas statute, whose language is substantially similar to the federal law, conveys the same right that *Weingarten* recognized. 317 S.W.3d at 888 ("Although not identical, the language is substantially similar with both statutes protecting the same rights-employees' rights to join together to protect themselves in their employment.").

The City and the chief suggest that a representation right is inconsistent with more recent legislative restrictions on Texas public employees' collective activity. Texas, for example, forbids public employees from striking or bargaining collectively.[13] TEX. GOV'T CODE §§ 617.002, .003. But in enacting those restrictions, the Legislature also specified that it did not intend to "impair the right of public employees to present grievances concerning . . . conditions of work either individually or through a representative that does not claim the right to strike." *Id*. § 617.005. Rather than eliminating the representation right, these restrictions (passed decades after section 101.001) demonstrate that the Legislature knows how to limit public employee union activity when it wants to. Instead, it left Labor Code section 101.001 untouched, even in the face of a decision from the United States Supreme Court that thoroughly dissected the scope of the representation right. Just last year, we adopted that Court's interpretation of a federal statute because the Texas Legislature did

---

[13] There are exceptions to the ban on collective bargaining. Cities (and other political subdivisions) may authorize their fire fighters and police officers to bargain collectively. *See* TEX. LOC. GOV'T CODE §§ 174.023, .051. The City of Round Rock has not authorized the Fire Fighter's Association to collectively bargain, although it adopted Local Government Code chapter 143, which allows the Association to negotiate with the City. *See id*. §§ 142.101, .110.

not amend its similar state law in response to that decision. *See Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 506-07 (Tex. 2012) (holding that Legislature's failure to amend Texas statute meant that decision applying Supreme Court precedent still governed).  The same reasoning should apply here.

The Court suggests—and the dissent below agreed[14]—that *Weingarten* was premised on the employee's right to bargain collectively. ___ S.W.3d at ___ ("[T]he Legislature may have decided not to extend representation rights to Texas public-sector employees because their unions lack authority to engage in collective bargaining, unlike the union in *Weingarten*.").  They assert that because Texas public employees lack that ability, our statute's right to protection should not be interpreted in the same manner.  I disagree.

*Weingarten* was grounded not in the employee's collective bargaining rights but in "§ 7's guarantee of the right of employees to act in concert for mutual aid and protection." *Weingarten*, 420 U.S. at 256.  Although the *Weingarten* court used the phrase "bargaining unit" to describe the employees at that particular workplace,[15] it did so because they were parties to a collective bargaining agreement, not because the phrase itself had special legal significance.

Federal courts of appeals applying *Weingarten* have rejected the notion that it was founded on the right to bargain collectively.  The Third Circuit held "it . . .  plain beyond cavil that the

---

[14] *See* 317 S.W.3d 871, 896 (Puryear, J., dissenting).

[15] *Weingarten*, 420 U.S. at 260-61 (noting that union representation at interviews assists the "entire bargaining unit by exercising vigilance to make certain that the employer does not initiate or continue a practice of imposing punishment unjustly" and that the representative would provide an assurance "to other employees in the bargaining unit").

*Weingarten* right is rooted in [the NLRA's] protection of concerted activity, not [the statute's] guarantee of the right to bargain collectively." *Slaughter v. NLRB*, 794 F.2d 120, 126 (3d Cir. 1986). Conversely, the Fifth Circuit concluded that a statute granting the right to bargain collectively but not the right "to engage in other concerted activities for the purpose of . . . other mutual aid or protection" did not convey the *Weingarten* right. *Johnson*, 944 F.2d at 251 (holding that "[t]he omission of that language is critical because the rule of *Weingarten* . . . is grounded upon it").[16] The Texas collective bargaining ban does not affect a public employee's right to unionize for protection, and it does not provide a basis for denying the representation right.

The Court rejects the right largely because our statute does not "confer[], by its plain language, the specific right to have a union representative present at an investigatory interview that an employee reasonably believes might result in disciplinary action." ___ S.W.3d at ___. Neither does "due process" "confer[] by its plain language" the specific right to notice and a hearing. Yet courts have long said those characteristics are essential to effectuate that constitutional mandate. *See, e.g., Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) ("Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the

---

[16] *See also Office of Admin. v. Pa. Labor Relations Bd.*, 916 A.2d 541, 549 (Pa. 2007) (rejecting the lower court's determination that collective bargaining formed the basis of the *Weingarten* right; stating that "we find it clear that *Weingarten* rights were grounded in the NLRA's Section 7 which protects the right of an individual employee to engage in concerted activities for mutual aid and protection"); *Glen*, No. 13723, at 8 ("While the federal act does guarantee [the right to bargain collectively], it was not implicated in *Weingarten* and the Supreme Court did not discuss it.").

case."). To rely on the absence of an expressly articulated right to representation is to deny the Court's obligation to state what the law means.

Words like "protection," "due process," or "equal protection" require judges to expound. The Legislature cannot anticipate every eventuality, and statutes often "embody purposeful ambiguity or are expressed with a generality for future unfolding." Felix Frankfurter, *Some Reflections on the Reading of Statutes, in* VIEWS FROM THE BENCH 181, 181 (Mark W. Cannon & David M. O'Brien, eds., 1985).[17] Courts routinely decide the meaning of such terms. What is a "reasonable time" (a phrase that appears 599 times in our statutes)? A "reasonable effort" (176 times)? "Best efforts" (thirty)? What is an "attempt to monopolize,"[18] a "just and right"[19] property division, or the "best interest of the child"?[20] Without judicial interpretation, these are just empty phrases. If the right to associate and form trade unions for protection is to be more than rhetoric, it must include rights like the one at issue here, and courts must decide the scope of such language. This was true when Texas first granted the right and when the Supreme Court decided *Weingarten* thirty-eight years ago.

---

[17] *See also, e.g.*, ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 32-33 (2012) ("Vagueness . . . is often intentional, as general terms . . . are adopted to cover a multitude of situations that cannot practicably be spelled out in detail or even foreseen."); Richard A. Posner, *Statutory Interpretation—in the Classroom and in the Courtroom*, 50 U. CHI. L. REV. 800, 808 (1983) (noting that many constitutional provisions (*e.g.* "free speech, due process, and the right to assistance of counsel") and statutes (like the Sherman Act) "are in reality the foundations, or perhaps in some cases the pretexts, for the evolution of bodies of case law that are the starting point and usually the ending point of analysis for new cases").

[18] TEX. BUS. & COM. CODE § 15.05(b); *see also Caller-Times Publ'g Co., Inc. v. Triad Commc'ns, Inc.*, 826 S.W.2d 576 (Tex. 1992) (deciding what constitutes predatory pricing, an element of a section 15.05(b) claim).

[19] TEX. FAM. CODE § 7.001.

[20] TEX. FAM. CODE § 153.002; *see also Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976) (outlining a nonexhaustive list of nine factors courts may consider in ascertaining a child's best interest).

## II.    Conclusion

The Texas statute was passed in 1899, a time of national labor upheaval and organized activity. Between 1881 and 1900, more than 22,000 labor strikes occurred throughout the country. *See* U.S. DEPARTMENT OF LABOR, SIXTEENTH ANNUAL REPORT OF THE COMMISSIONER OF LABOR, STRIKES AND LOCKOUTS [1881-1905] 340 (1901). Five hundred seventy-four were in Texas. Of those, forty involved workers striking "[a]gainst being compelled to sign [an] agreement to deal with employers as individuals instead of through [a] union"—the third most common complaint, following wage and hour disputes.[21]  *Id*. at 406-07. Rodriguez, the Association, and a number of amici provide extensive historical detail about Texas labor relations at that time. Without repeating the specifics here, it is clear that the Legislature was aware of the right to union representation when it granted employees the ability "to associate themselves together and form trades unions and other organizations for the purpose of protecting themselves in their personal work." Act of May 27, 1899, 26th Leg., R.S., ch. 153, 1899 Tex. Gen. Laws 262, 262 (amended 1993) (current version at TEX. LAB. CODE § 101.001). I would not eliminate that protection today. Because the Court does so, I respectfully dissent.

_____
Wallace B. Jefferson
Chief Justice

---

[21] According to the Department of Labor, all forty of those strikes were successful. *See* U.S. DEPARTMENT OF LABOR, SIXTEENTH ANNUAL REPORT OF THE COMMISSIONER OF LABOR, STRIKES AND LOCKOUTS [1881-1905] 406 (1901).

12

OPINION DELIVERED:  April 5, 2013